[No. 37337.   Department Two.   December 17, 1964.]

FEDERAL FINANCE CO., INC., *Appellant*, v. JACOB B. (JAKE) MERKEL *et al.*, *Respondents.**

*Helsell, Paul, Fetterman, Todd & Hokanson, Charles H. Paul* and *Daniel W. Giboney,* for appellant.

FINLEY, J.—This action was commenced by plaintiff, Federal Finance Co., Inc., as payee of a promissory note, to recover judgment against defendants Jacob and Alice Merkel, husband and wife, makers of the note. The Merkels' defense was a discharge in bankruptcy. Federal Finance asserted the bankruptcy discharge could not be interposed as a defense because a false financial statement was made by

*Reported in 397 P. (2d) 436.

the Merkels in connection with the renewal and an increase in the amount of the loan made by Federal Finance and covered by the note which is the subject of this lawsuit. Federal Finance relies upon recent amendments to § 14 and § 17 of the National Bankruptcy Act, urging that these amendments negate, or counteract, the decision in *Household Finance Corp. v. DeShazo,* 57 Wn. (2d) 771, 359 P. (2d) 1044 (1961), which would otherwise be controlling and unfavorable to their position herein. The trial court, relying upon *DeShazo* as controlling, decided the matter adversely to Federal Finance. This appeal followed.

At this point a brief reference to certain background facts will be helpful. On September 13, 1961, the Merkels were indebted to Federal Finance on an unpaid balance of $236.95 on a prior loan. The Merkels applied for an additional loan of $90 to purchase their winter fuel supply. Federal Finance granted the request and exchanged the old note for a new note totaling $331.84 to cover both the old and the additional indebtedness. In connection with this refinancing, the Merkels executed a financial statement in which they failed to list debts to two other small loan companies in the total amount of $1,087.07. Jacob Merkel testified that he made the false statement because he doubted that he could obtain the new loan from Federal Finance if he made a full disclosure. The trial court found that Jacob Merkel intended to deceive and, in fact, did deceive Federal Finance, and that Federal Finance had relied on the false financial statement.

In entering judgment in favor of Federal Finance, the trial judge limited recovery to $94.89. He relied upon *DeShazo, supra,* in denying recovery of the full claim for the balance due of $294.99, plus interest and charges. In *DeShazo,* a debtor owed a loan company $349.02. In a transaction to secure an additional loan of $150.98, the debtor gave a false financial statement; *i.e.,* he omitted listing other debts amounting to $600. The loan company canceled the first note and, as in the instant case, took a new note covering both loans. After this refinancing, the debtor went through bankruptcy. The applicable National Bankruptcy Act sections were:

Bankruptcy Act § 14(c)(3), 11 U.S.C. 1683, § 32(c) (1958): "The court shall grant the discharge unless satisfied that the bankrupt has . . . (3) obtained money or property on credit, or obtained an extension or renewal of credit, by making or publishing or causing to be made or published in any manner whatsoever, a materially false statement in writing respecting his financial condition; . . ."

Bankruptcy Act § 17(a)(2), 11 U.S.C. 1685, § 35(a) (1958): "A discharge in bankruptcy shall release a bankrupt from all of his provable debts, whether allowable in full or in part, except such as . . . (2) are liabilities for obtaining money or property by false pretenses or false representations, . . ."

Under these provisions a creditor holding a false financial statement executed by his debtor-bankrupt had two alternatives. He could prevent the bankrupt from obtaining a discharge altogether under § 14(c)(3); or, he could waive his right to block the discharge and participate in the bankruptcy and then pursue the balance of his debt in a state court as § 17(a)(2) made such a debt nondischargeable. In *DeShazo,* the creditor did not block the discharge. Instead, the creditor sued for the whole debt in the Washington courts. In the *DeShazo* decision we limited the recovery to $150.98, which was the amount of the new loan, holding this was the only "property" obtained by the false statement. This result apparently was the minority view in terms of state courts passing upon this problem. Subsequently, Congress amended the above statutory provisions. The amended sections now read as follows:

Bankruptcy Act § 14c(3), 74 Stat. 408 (1960), 11 U.S.C.A. § 32c (Cum. Supp. 1963): "The court shall grant the discharge unless satisfied that the bankrupt has . . . (3) while engaged in business as a sole proprietor, partnership, or as an executive of a corporation, obtained for such business money or property on credit or as an extension or renewal of credit by making or publishing or causing to be made or published in any manner whatsoever a materially false statement in writing respecting his financial condition or the financial condition of such partnership or corporation; . . ."

Bankruptcy Act § 17a(2), 74 Stat. 409 (1960), 11 U.S.C.A. § 35(a) (Cum. Supp. 1963): "A discharge in bankruptcy shall release a bankrupt from all of his provable debts, whether allowable in full or in part, except such as . . . (2) are liabilities for obtaining money or property by false pretenses or false representations, *or for obtaining money or property on credit or obtaining an extension or renewal of credit in reliance upon a materially false statement in writing respecting his financial condition made or published or caused to be made or published in any manner whatsoever with intent to deceive,* . . ." (Italics added to indicate the additions made to this section by the 1960 Amendments.)

Obviously, the question is whether the indicated legislative action has aborted our ruling; *i.e.*, the "so-called" *DeShazo* doctrine.

■ Legislative history indicates that Congress apparently was concentrating primarily on reducing the abuse of a somewhat one-sided bargaining advantage the small loan company had when they held a false financial statement executed by a debtor-bankrupt. Senate Report No. 1688, 86th Cong., 2d Sess., 2 U.S. Code Cong. & Adm. News 2954 (1960). Thus Congress clearly ended the facility or ability to use these statements to prevent discharges of *nonbusiness bankrupts*, as § 14c(3) now only allows a false financial statement to prevent the discharge of a person engaged in business. While Congress eliminated the power of small loan companies to stop discharges of nonbusiness bankrupts under § 14c(3), Congress also broadened § 17a(2), giving small loan companies increased protection as to their particular loans made in reliance upon fraudulent financial statements. The statutory language effecting this increased protection appears in italics in the quotation of § 17a(2) above. While the Congressional Record is somewhat sparse on this aspect of the amendments, there is other strong evidence supporting the indicated intent. The following quote from a House Committee Report appears in the Senate Report on the above-quoted amendments:

"The purpose of this amendment is to assure that although the obtaining of money or property on credit through the issuance of a false financial statement is no longer to be

ground for denial of a discharge to a nonbusiness bankrupt, any obligation incurred as a result of such a statement [is] to be nondischargeable under section 17. The addition of the elements of reliance by the creditor and intent to deceive by the debtor are merely enactments of existing case law." Senate Report No. 1688, 86th Cong., 2d Sess., 2 U.S. Code & Adm. News 2954, 2956 (1960).

The addition of the phrase "obtaining an extension or renewal of credit in reliance upon a materially false statement" to § 17a(2) is particularly noteworthy in light of the following testimony by an attorney before the Subcommittee of the Committee on the Judiciary of the United States Senate:

"MR. CHAPMAN. . . .

"  . . .

"There has been a proposed amendment to section 17(a) here which adds in somewhat, I think, mere surplusage, and there is a little advantage stuck in there because the prevailing cases have held recently, I think, that where a debtor had borrowed money and, say, owed a loan company $400 and he goes in and borrows another hundred, when he borrows the second hundred he gives the false financial statement.

"He gets the last hundred, the loan company adds all his indebtedness together, making a $500 loan, adding the old debt although the loan company loses only a hundred.

"SENATOR ERVIN. They are making a further extension of credit?

"MR. CHAPMAN. Getting an extension of credit on the old debt. Now the man may go bankrupt a month later.

"The loan companies in the courts have been suing for the whole $500. Some of the courts have held that the loan company is entitled only to the $100 and whatever damages it has suffered by extending credit on the other $400.

"If you put in this extension of credit here, you get a reverse opinion on that. . . ." *Hearing on H. R. 106 Before a Subcommittee of the Senate Committee on the Judiciary,* 85th Cong., 2d Sess. 102 (1958).

A leading author in this field also supports this view:

"With the amendment of § 14c(3) removing the false financial statement as a ground for objecting to the discharge in bankruptcy of the nonbusiness bankrupt it became impor-

tant to make certain that the obtaining of money, property or credit by use of such false statement resulted in a non-dischargeable debt. Although case law had reached this conclusion prior to the amendment, the addition of the following clause in § 17(2) removed any doubt on the subject:

" 'or for obtaining money or property on credit or obtaining an extension or renewal of credit in reliance upon a materially false statement in writing respecting his financial condition made or published or caused to be made or published in any manner whatsoever with intent to deceive, . . .' " 1 Collier, Bankruptcy 1577 (14th ed. 1961).

Finally, and very persuasively, we are influenced by a recent decision of the Wisconsin Supreme Court. That court had also followed the minority interpretation of § 14 and § 17 expressed in *DeShazo, supra. Household Finance Corp. v. Christian,* 8 Wis. (2d) 53, 98 N. W. (2d) 390 (1959). However, in *First Credit Corp. v. Wellnitz,* 21 Wis. (2d) 18, 123 N. W. (2d) 519 (1963), the Wisconsin Supreme Court held that the above outlined amendments rendered the *Christian* case, *supra,* inoperative. Other cases support this conclusion: *Liberal Finance Corp. v. Holley,* 157 So. (2d) 376, 380 (La. 1963); *M-A-C Loan Plan, Inc. v. Cooper,* 23 Conn. Supp. 184, 179 A. (2d) 313 (1961); *Matter of Croston,* Bankrupt, No. 46108, U. S. Dist. Ct., W.D. N.Y. Feb. 8, 1962, unreported but discussed in Brown, *Full Amount of Bankrupt's Indebtedness to Lender Non Dischargeable—Where Last Loan obtained by False Financial Statement,* 16 Personal Finance Law Quarterly 41 (1962); *Family Loan Corp. v. Grimaldi,* unreported opinion of App. Div. Mass. N. Dist. No. 5919 (Sept. 9, 1964).

■ We have given this case extensive treatment because we have concluded that the above amendments have changed the statutory underpinnings of the *DeShazo* decision.[1] We have been hesitant to depart from *DeShazo* because that case followed a policy which minimized the amount of debts that continue to drag on a debtor after a bankruptcy discharge. This, of course, is basic to the underlying policy of the National Bankruptcy Act. However, it

---

[1] We should also note that the respondents have neither made an appearance nor filed a brief in this matter.

now appears that Congress has shifted its emphasis in this area. In exchange for removing the power of small loan companies to block discharge, Congress has given the small loan companies the right to secure their whole indebtedness from a dishonest debtor if the requirements of § 17a(2) are satisfied. Since we are convinced that congressional intent is clear in this case, we cannot substitute our judgment for the obvious policy decision that Congress has made here. Thus, we conclude that the amendments to § 14c(3) and § 17a(2) make the *DeShazo* opinion inoperative. As there was an "extension or renewal of credit" on the old debt of $236.95, made in reliance on the false financial statement, that debt is nondischargeable under § 17a(2). The judgment is reversed, and the trial court is instructed to enter judgment for the appellant for the whole balance due of $294.99, plus interest and costs.

OTT, C. J., DONWORTH, WEAVER, and HAMILTON, JJ., concur.