**In the Matter of Paul Ferdinand SCHUERMAN, Bankrupt.**

**No. 71–8139.**

United States District Court, E. D. Kentucky, Covington Division.

Dec. 20, 1973.

R. Howard Smith, Newport, Ky., for petitioner, Term Finance Co.

Robert C. Patton, Newport, Ky., for bankrupt.

## MEMORANDUM

SWINFORD, District Judge.

By order dated March 30, 1973, the Referee in Bankruptcy found that a financing statement submitted to Term Finance Company in connection with the renewal of a loan was materially false and published with intent to deceive, 11 U.S.C. § 35(a)(2), but denied discharge only as to the "fresh cash" advanced in connection with the statement. This petition for review filed by that creditor urges that the entire debt should have been held nondischargeable.

Term Finance relies primarily upon amendments to the Bankruptcy Act expressive of a Congressional intention to deny discharge of the entire obligation owed by a misrepresenting debtor. Prior to amendment in 1960, Section 14(c)(3) of the Bankruptcy Act denied discharge to a debtor who

"obtained money or property on credit, or obtained an extension or renewal of credit, by making or publishing or causing to be made or published in any manner whatsoever, a materially false statement in writing respecting his financial condition . . ." 11 U.S.C. § 32(c)(3) (1958 Ed.)

The "Celler Amendment" of 1960 retained this language in Section 14(c)(3) but limited its application to certain business bankrupts, and inserted similar terms in Section 17(a)(2), 11 U.S.C. § 35(a)(2), providing for the nondischargeability of particular debts. It is contended that this amendment represented a bargain whereby creditors forfeited their prior right under Section 14 to bar discharge of all debts in exchange for the opportunity under Section 17 to contest discharge of a particular loan extended in reliance upon a false statement. Further, the similarity of the language in Sections 14(c)(3) and 17(a)(2) manifests a legislative intention to adopt the prevailing state rule denying discharge of the entire debt occasioned by a false statement. This argument has gained some support.

"Both the plain terms of the changes affected by the Cellar (sic) Amendment and its legislative history indicate a give-and-take whereby the lenders gave up their power to oppose a discharge under Section 14 of the Act and took in return express Congressional adoption of the hitherto supposed 'majority rule' that an extension or renewal of existing indebtedness in reliance upon a materially false written financial statement is not dischargeable and that the entire indebtedness may be recovered by the lender after the borrower's discharge in bankruptcy." Household Finance Corporation v. Walters, 8 Ariz.App. 114, 116, 443 P.2d 929, 931 (1968).

The Kentucky Court of Appeals adopted this view in Local Industrial Finance Company v. McDougale, Ky., 404 S.W.2d 789 (1966); see also M–A–C Loan Plan, Inc. v. Cooper, 23 Conn.Sup. 184, 179 A. 2d 313 (1961); Federal Finance Co. v. Merkel, 65 Wash.2d 379, 397 P.2d 436 (1964).

The Referee's order followed a determination based upon an analysis of the development of the Bankruptcy Act that

state holdings are no longer dispositive of this question, and that the implementation of a uniform national rule in bankruptcy mandates denial of discharge only as to the additional amount supplied in a loan renewal. The court is in accord with both the Referee's concept of the legislative evolution in this area and the conclusion that denial of discharge should apply only to "fresh cash".

■ The discussion by the Referee divides the enactments governing dischargeability into three phases, beginning with 1903. Prior to 1960, the creditor whose loan was extended or renewed in response to a false financing statement could either invoke Section 14 of the Act to deny discharge of all the bankrupt's debts or remain silent in the federal proceedings and file suit in state court to except the debt from discharge. 1A Collier on Bankruptcy, Paragraph 14.34. Selection of the first option did not require the federal courts to consider the issue at bar since application of Section 14 resulted in denying discharge of all the bankrupt's debts. In re Henahan, N.D.Ill., 32 F.Supp. 278 (1940). A denial of discharge in the bankruptcy court would benefit all creditors while maintenance of a separate action in a state forum aided only the victimized lender; consequently, the latter option was generally preferred. Shuchman, "The Fraud Exception in Consumer Bankruptcy", 23 Stanford L.Rev. 735 (1971) (hereinafter: Shuchman), at 740. State courts confronted with the "fresh cash" issue divided, with a slight majority denying discharge of the entire debt. See Federal Finance Co. v. Merkel, supra; 9 Am.Jur.2d "Bankruptcy" Section 785, at page 587 (1973 Supplement); 8 Remington on Bankruptcy, Section 3321.

Phase two of this development was fostered by the Celler Amendment which in its final form inserted language in Section 17(a)(2) denying discharge only of the particular debt occasioned by the false statement. While some courts seized upon the utilization in Section 17(a)(2) of language similar to Section 14(c)(3) as indicating a Congressional intention that the entire debt be discharged, Household Finance Corporation v. Walters, supra; M–A–C Loan Plan, Inc. v. Cooper, supra; Local Industrial Finance Company v. McDougale, supra; First Credit Corporation v. Wellnitz, 21 Wis.2d 18, 123 N.W.2d 519 (1963), a thorough examination of the legislative history indicates otherwise. The Referee noted that the 1960 amendment as originally drafted repealed Section 14(c)(3) *in toto* and vested authority in the Bankruptcy Courts to determine the dischargeability of debts under Section 17(a)(2); as enacted, Section 14(c)(3) was retained but limited to business bankrupts, and state courts continued to entertain actions by injured creditors. Thus, the legislative transfer of similar language from one section to another was intended only to preserve existing rules modifying the provision as a whole and should not be interpreted as embracing state decisional law on this particular point. The Celler Amendment did not evince an intent to adopt the majority state rule since it had not previously been necessary for federal courts to consider the question.

Issues concerning the extent of non-dischargeability during Phase II would have been resolved by the Kentucky holding that the extension of additional credit in reliance upon a false financing statement bars discharge of the entire debt. Local Industrial Finance Co. v. McDougale, supra; Erie R. R. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). However, the advent in 1970 of provisions granting the federal courts exclusive authority to ascertain the dischargeability of debts ends the necessity for reference to state laws and institutes another standard of inquiry. See 11 U.S.C. § 35(c). The exercise of this jurisdiction is dedicated not to acquiescence with conflicting local rules but to the creation and maintenance of uniform federal standards consistent with the equitable framework of proceedings in bankruptcy. 9 Am.Jur.2d "Bankruptcy" Section 38.

This court is impressed by two factors noted in the Referee's determination that discharges should be denied only to the extent of the fresh cash supplied: (1) Renewals of existing loans constitute at least 70% of all debts owed small loan companies; (2) The majority of applications to determine dischargeability are filed by small loan companies in response to allegedly false financing statements submitted in connection with loan extensions. This high frequency of renewals is in many cases the result of statutes requiring lending institutions to consolidate separate loans. 54 Am.Jur. 2d "Moneylenders and Pawnbrokers" Section 21; See K.R.S. 288.530(11). It is questionable whether a borrower acting solely in response to such statutes has "obtained" credit as contemplated by 11 U.S.C. § 35(a)(2). An appropriate reaction to these statistics is found in In re Birkholz, W.D.Wis., C.C.H.Bankr.L. Rep. Paragraphs 64.169, 64.316 (1972), where the court ruled that denial of discharge be limited to the "fresh cash" occasioned by the misrepresentation.

This court is in agreement with the conclusions of the Referee in Bankruptcy; accordingly, an order will be entered denying the petition for review.