400 F.Supp. 1112 (1975)
In re Hubert Lee ELLIS, Jr., a/k/a H. Lee Ellis, a/k/a Lee Ellis, Bankrupt.
BENEFICIAL FINANCE COMPANY, Plaintiff,
v.
Hubert L. ELLIS, Jr., Defendant.
No. 74-B-991.
United States District Court, S. D. New York.
September 3, 1975.
*1113 *1114 Gilday & Morrow, Poughkeepsie, N. Y., for plaintiff.
Hubert L. Ellis, Jr., bankrupt pro se.

OPINION
ROBERT L. CARTER, District Judge.
This is an appeal by a creditor, Beneficial Finance Company ("Beneficial"), from a decision by Bankruptcy Judge Townsend, dated January 8, 1975, which determined the dischargeability of a debt owed by the above-named bankrupt to Beneficial.

Facts and Proceedings to Date
A voluntary petition was filed by the nonbusiness bankrupt pro se on July 1, 1974. On July 18, 1974, Beneficial filed a complaint, see Bankruptcy Rule 409(a) (1), pursuant to Section 17(a)(2) of the Bankruptcy Act, 11 U.S.C. § 35(a)(2), to have its debt declared nondischargeable and for judgment of $1,521.08.
Hearings were held in September and October of 1974, which adduced the following facts: On April 24, 1974, the bankrupt, who had obtained two previous loans from Beneficial, sought and received a third loan for $1,521.08. The sum represented $618.35 owed on the second loan, various charges, and $431.73 in "new" money. Contemporaneous with the loan, the bankrupt filled out and signed a financial statement in which he represented that he had no debts and liabilities over $25, other than those listed on the statement, which totalled $1,013.70. In fact, the bankrupt was indebted to the tune of $12,000 to more than 15 other creditors.
Beneficial urged two bases for nondischargeability of the entire amount of the April 24 loan. The first, apparently grounded upon the false pretenses portion of Section 17(a)(2), alleges that the bankrupt, on April 24, was insolvent, concealed this from Beneficial, and also had no present intention of repaying the loan. The second basis for the claim of nondischargeability tracks the language of the "materially false statement in writing" clause of Section 17(a)(2), that Beneficial granted the loan in reliance on the fraudulent financial statement of April 24.[1]
Judge Townsend dismissed the first claim for failing to meet the particularity requirement of the new Bankruptcy Rules; he further found insufficient proof that the bankrupt contemplated bankruptcy on April 24 or that he had no present intention of repaying the loan. Regarding the second claim, Judge Townsend determined that Beneficial relied on the fraudulent financial statement only insofar as it advanced the new money, and held the debt nondischargeable to that extent.
This appeal was heard on July 1, 1975, with the bankrupt again appearing pro se; Beneficial did not enter a personal appearance but submitted an extensive brief. Decision was reserved pending a written opinion.

Legal Issues and Their Disposition
Essentially, two issues are raised by Beneficial on appeal. The first is whether the Bankruptcy Judge erred in dismissing the false pretenses claim; the second is whether Judge Townsend erred in limiting nondischargeability to the amount of new money advanced.
Bankruptcy Rule 709 incorporates Rule 9, F.R.Civ.P., in adversary proceedings in bankruptcy. Rule 9(b), in pertinent *1115 part, provides that "[i]n all averments of fraud . . . the circumstances constituting fraud . . . shall be stated with particularity." The Bankruptcy Judge determined that paragraphs 6 and 7 of the complaint,[2] at best, alleged the bankrupt's concealment of insolvency and his lack of intention to repay the loan at the time he filled out the financial statement. He then concluded that the allegations failed to survive the hurdle presented by Rule 709.
In this determination the Judge was correct. The allegations here are "merely conclusory and clearly do not apprise the [bankrupt] of the claims made against [him]. . . . Some further explanation of the allegations is necessary to indicate how they constitute fraud." Felton v. Walston and Co., 508 F.2d 577, 581 (2d Cir. 1974). In Robertson v. NBA, 67 F.R.D. 691 S.D.N.Y. July 8, 1975), this court, in passing upon the sufficiency of a cross-claim, stated at 8:
"Because of the wide range of conduct which fraud encompasses `a defendant needs a substantial amount of particularized information about [the] claim in order to enable him to understand it and effectively prepare his response.' Wright & Miller, Federal Practice and Procedure, § 1296, at 400 (1969). Sensitivity to the particularity requirement also reflects judicial awareness of the harm that comes to a defendant's reputation when he is charged with such wrongdoing. Segal v. Gordon, 467 F.2d 602, 607 (2d Cir. 1972); Lewis v. Varnes, 368 F.Supp. 45, 47 (S.D.N.Y.), aff'd, 505 F.2d 785 (2d Cir. 1974). Accordingly, conclusory allegations that conduct was fraudulent are insufficient, Shemtob v. Shearson, Hammill & Co., 448 F.2d 442, 444 (2d Cir. 1971), for such general assertions serve no informative function, Lynn v. Valentine, 19 F.R.D. 250, 254 (S.D.N.Y.1956). `Facts must be alleged which, if proven, would constitute fraud or which lead clearly to the conclusion that fraud has been committed.' Chicago Title & Trust Co. v. Fox Theatres Corp., 182 F.Supp. 18, 31 (S.D.N. Y. 1960)."
The false pretenses claim was properly dismissed.
Moreover, Beneficial failed to present sufficient proof from which to draw a fair inference that the bankrupt contemplated bankruptcy or intended not to repay the loan. These findings must be sustained unless they are "clearly erroneous," with the court giving "due regard to the opportunity of the referee to judge the credibility of the witnesses." Bankruptcy Rule 810; In re Stephen-Leedom Carpet Co., No. 73-B-577 (S.D.N.Y. July 15, 1975). The court notes that:
"`[i]n a case of this type it is not sufficient that the Court, if it were the trier of the facts, might have reached a different conclusion. The "clearly erroneous" rule applies not only to basic facts but also to differing inferences which may be drawn from those facts.' In re Cichanowicz, 247 F. 975, 977 (E.D.N.Y.), aff'd 353 F.2d 538 (2d Cir. 1965)."
Local 30, Designers' Guild of Ladies' Apparel v. Hers Apparel Industries, Inc., (No. 74-B-831, at 13 S.D.N.Y. March 3, 1975). I cannot say that those findings of fact were clearly erroneous.
The second issue on appeal concerns Judge Townsend's conclusion that Beneficial relied on the false financial statements only to the extent that it advanced new money. In so finding, Judge Townsend integrated several factors: (1) that Beneficial did not rely on the false financial statement in refinancing the prior loan, and hence the refinancing was not "obtained" by the statement, *1116 since there was no evidence that the bankrupt's prior note was in default, due, or that the bankrupt had ever submitted a materially false statement relative to the prior loan; (2) that the refinancing was not "obtained" at the behest of the bankrupt, but instead was coerced by Banking Law § 352 (McKinney's 1971); (3) that the refinancing was for the convenience of Beneficial, and consequently not "obtained" by the bankrupt; and (4) that there was no intent to deceive Beneficial as to the refinanced portion of the loan, since the refinancing was forced upon and not obtained by the bankrupt who, without funds to pay the original loan balance, was presented with no alternative.
The propriety of invoking these factors to determine the extent of reliance by a lender is fully supported by decisional authority. Before exploring this further, I deem it appropriate to repeat the following admonition:
"`[T]he basic purpose of the Bankruptcy Act [is] to give the debtor a "new opportunity in life and a clear field for future effort, unhampered by the pressure and discouragement of pre-existing debt. . . ."'" Lines v. Frederick, 400 U.S. 18, 19, 91 S.Ct. 113, 27 L.Ed.2d 124 (1970); In re Busatt, No. 73-B-5 (E.D.N.Y. July 10, 1973); In re Fuhrman, No. BK-72-756 (W.D.N.Y. Nov. 2, 1972). Exceptions to discharge should be construed in favor of the bankrupt so far as reasonable. Gleason v. Thaw, 236 U.S. 558, 35 S.Ct. 287, 59 L.Ed. 717 (1915)," In re Soika, 365 F.Supp. 555, 556 (W.D.N.Y.1973).
Several courts have found that a lender's renewal of a pre-existing debt in conjunction with an additional loan was based upon prior dealings with the borrower, and consequently not "obtained" by the submission of a false financial statement. In re Andrews, CCH Bankr.L.Rep. ¶ 64,376 (E.D.Mich. 1972), aff'd (E.D.Mich. April 12, 1973); In re Birkholz, CCH Bankr.L.Rep. ¶ 64,169 (W.D.Wis.1971), aff'd, CCH Bankr.L.Rep. ¶ 64,316 (W.D.Wis.1972); In re Reynolds, 47 Amer.Bankr.L.J. 61 (S.D.N.Y.1972); cf. In re Plumb, CCH Bankr.L.Rep. ¶ 65,464 (S.D.N.Y.1974); In re Goldstein, CCH Bankr.L.Rep. ¶ 65,288 (S.D.N.Y.1974).
Similarly, courts have recognized that the extension or renewal of an existing loan is for the convenience of the loan company rather than at the specific behest of the debtor. In re Burke, CCH Bankr.L.Rep. ¶ 64,016 (E.D.Tenn.1971) ("The procedure under which the refinancing was undertaken is known as `flipping.'"); In re Birkholz, supra, CCH Bankr.L.Rep. ¶ 64,316; In re Andrews, supra, CCH Bankr. L.Rep. ¶ 64,376; see J. Lee, Leading Case Commentary, 46 Amer.Bankr.L.J. 245, 246 (1972). Moreover, "under the laws of most states statutory limitations on the rate of interest chargeable by small loan companies dictate that new loans must be consolidated with existing loans when additional credit is extended, because such companies cannot have two loans in effect with one individual at the same time without violating restrictions on interest charges." Leading Case Commentary, supra, 46 Amer. Bankr.L.J. at 246. See Banking Law, § 352. Because the refinancing of an existing loan is, in effect, coerced by statutory regulation of the lender, it is difficult to characterize the refinancing as being "obtained" by the debtor within the meaning of Section 17(a)(2). Judicial recognition of the validity of this proposition has been evidenced in several cases. See In re Birkholz, supra; In re Schuerman, 367 F.Supp. 1347, 1350 (E.D.Ky.1973); In re Reynolds, supra; cf. In re Pezzella, No. 74-B-127, at 4 (N.D.N.Y. Jan. 10, 1975).
I must confess that although the last factor which Judge Townsend relied upon  that there was no intent to deceive for the borrower had no alternative but to refinance the original debt  has some support in the case law, see In re Burke, supra, the financial distress *1117 of a borrower seems irrelevant to determining whether one has "obtained" money through a materially false financial statement in writing. But even with the negation of that factor, the court is persuaded that the Judge's conclusion regarding the extent of Beneficial's reliance was sound and has strong underpinnings.[3]
The last issue to consider is whether, once it is found that a materially false financial statement has been submitted to the lender and relied upon in part, nondischargeability is limited to the new money advanced, as Judge Townsend found, or whether the full amount of the indebtedness should be held nondischargeable, as Beneficial argues.
A slight majority of state courts considering this matter have, at one time or another, opted for the second view, and have held the entire debt nondischargeable. See Leading Case Commentary, supra, 46 Amer.Bankr.L.J. at 248-49. The 1970 amendments to the Bankruptcy Act granted the federal courts exclusive authority to ascertain the dischargeability of debts and this obviates the need to either choose, reconcile or refer to state law in this area. See 11 U.S.C. § 35(c). "The exercise of this jurisdiction is dedicated not to acquiescence with conflicting local rules but to the creation and maintenance of uniform federal standards consistent with the equitable framework of proceedings in bankruptcy." In re Schuerman, supra, 367 F.Supp. at 1349. Unfortunately, the federal courts have not fared much better than the state courts in their attempt to achieve uniformity. Courts in this circuit also have gone their separate ways when this issue has been addressed. Compare Matter of Shade, (W.D.N.Y. July 24, 1974) with In re Soika, supra.
The better approach, and the one that has found the most favor among the bankruptcy and district courts of this circuit, is to limit nondischargeability to that portion of the loan actually given in reliance upon the false statement. See In re Soika, supra; In re Pezzella, supra; In re Fuhrman, CCH Bankr.L. Rep. ¶ 64,653 (W.D.N.Y.1972); In re Reynolds, supra; In re Ross, 47 Amer. Bankr.L.J. 77 (S.D.N.Y.1972); contra, Matter of Shade, supra. The court agrees with the analysis of those cases which found that the 1960 amendment to Section 17(a)(2) did not evidence a congressional intent to adopt the majority state rule as to nondischargeability of the full debt, see, e. g., In re Soika, supra, 365 F.Supp. at 556; see also Leading Case Commentary, supra, 46 Amer.Bankr.L.J. at 251, and which consequently limited nondischargeability to "actual pecuniary loss" sustained, i. e., the new money advanced.
Here, the actual pecuniary loss sustained by Beneficial is limited to the new money actually obtained by the bankrupt. The decision of Judge Townsend is affirmed in all respects.
So ordered.
NOTES
[1] Section 17(a)(2) provides in pertinent part:

Dischargeability of debts  Debts not affected by discharge
(a) A discharge in bankruptcy shall release a bankrupt from all of his provable debts, whether allowable in full or in part, except such as . . . (2) are liabilities for obtaining money or property by false pretenses or false representations, or for obtaining money or property on credit or obtaining an extension or renewal of credit in reliance upon a materially false statement in writing respecting his financial condition made or published or caused to be made or published in any manner whatsoever with intent to deceive . . ..
11 U.S.C. § 35(a)(2)
[2] Paragraph 6 of the complaint states: "That at the time of financial statement, the defendant was in fact insolvent and did conceal this fact from plaintiff herein;" paragraph 7 states: "That the defendant at the time he made the application for the aforesaid loan had no intention of paying the same."
[3] Beneficial also argues that Judge Townsend erred in not finding that the refinancing, by releasing a co-maker on the prior loan, constituted independent consideration for the April 24 loan in its entirety, i. e., that the bankrupt received not only a loan with a portion paying off a pre-existing debt, but also the release of a potentially solvent co-maker. It contends that this has enough significance to distinguish this case from those recognizing the "new money theory." The court need not consider this unique argument, for the record does not support Beneficial's largely speculative assertion that the bankrupt had, as one of his objectives in securing the last loan, the release of the co-maker.