**In the Matter of Daniel R. PETERSON, Bankrupt.**

**No. 1–75 Bky 87.**

United States District Court, D. Minnesota, First Division.

March 31, 1977.

John H. Bix, Minneapolis, Minn., appeared for Postal Thrift Loans of Minnesota, Inc.

## MEMORANDUM ORDER

ALSOP, District Judge.

This case is presently before the court on the petition of the creditor Postal Thrift Loans of Minnesota, Inc. (Postal) to review the order by the Bankruptcy Judge, Hon. John J. Connelly, discharging the bankrupt's obligation to repay the amount of Postal's renewed loan to him that does not constitute "fresh cash."

The bankrupt, Daniel Peterson, filed an involuntary petition in bankruptcy on January 24, 1975. Postal then filed a complaint pursuant to Section 17a(2) of the Bankruptcy Act, 11 U.S.C. § 35(a)(2), to have its debt declared nondischargeable. Hearings were held on September 9, 1975 and the Bankruptcy Judge found that the bankrupt had obtained a loan from Postal on May 20, 1974, in the sum of $2,682.00, which refinanced an earlier loan by Postal as well as advanced $458.63 in new money.

The bankruptcy court found that, as a basis for obtaining the new loan, the bankrupt had executed and presented a written financial statement understating his outstanding debts by $4,516.02. The financial statement showed debts of $2,050.00 excluding the prior loan with Postal, whereas, in fact, the bankrupt's debts amounted to $6,566.02. The Bankruptcy Judge then concluded:

[t]hat said financial statement was made, executed and delivered for the purpose of obtaining a loan from [Postal], that said financial statement was intentionally false and received by [Postal] as and for a true statement of financial condition, and was relied upon by [Postal] in granting defendant said loan, and if the true debts and liabilities had been stated by the defendant, no loan would have been made.

However, rather than declaring the entire debt to be nondischargeable, the Bankruptcy Judge held that under Section 17a(2) of the Bankruptcy Act,[1] only the $458.63 fresh cash advance was nondischargeable. The only issue on appeal is whether the Bankruptcy Judge erred in concluding, as a matter of law, that only the new money advanced was nondischargeable.

A clear majority of the federal courts[2] that have addressed this issue have limited recovery to the amount of the fresh cash advanced. *In re Ellis,* 400 F.Supp. 1112 (S.D.N.Y.1975); *In re Pezzella,* No. 74 BKY 127 (N.D.N.Y. Jan. 10, 1975); *In re McNee,* 390 F.Supp. 271 (D.C.N.Y.1975); *In re Fuhrman,* 385 F.Supp. 1185 (D.C.N.Y.1973); *In re Schuerman,* 367 F.Supp. 1347 (D.C.Ky. 1973); *In re Soika,* 365 F.Supp. 555 (W.D.N. Y.1973).

Several courts have reached this result by concluding that when a lender refinances a pre-existing debt and concomitantly advances additional monies, the refinancing is based upon prior dealings with the borrower and hence is not "obtained" as a result of the false financial statement. *See, e. g., In re Andrews,* CCH Bankr.L.Rep. ¶ 64,376 (E.D.Mich.1972), *aff'd* (E.D.Mich. April 12, 1973); *In re Berkholz,* CCH Bankr.L.Rep. ¶ 64,169 (W.D.Wis.1971), *aff'd,* CCH Bankr. L.Rep. ¶ 64,316 (W.D.Wis.1972). Other courts have arrived at this result by recognizing that the renewal of an existing loan is for the convenience of the loan company and not at the request of the debtor. *See,*

*e.g., In re Burke,* CCH Bankr.L.Rep. ¶ 64,-016 (E.D.Tenn.1971). "Moreover, 'under the laws of most states[,] statutory limitations on the rate of interest chargeable by small loan companies dictate that new loans must be consolidated with existing loans when additional credit is extended, because such companies cannot have two loans in effect with one individual at the same time without violating restrictions on interest charges.'" *In re Ellis,* 400 F.Supp. 1112, 1116 (S.D.N.Y.1972), *quoting,* Leading Case Commentary 46 Am.Bankr.L.J. 245, 246 (1972).

The court is aware of only two federal courts that have held the entire amount to be nondischargeable. *In re Shade,* No. 73 BKY 1018 (W.D.N.Y. July 24, 1974); *In re DeLong,* No. 71 BKY 85796 (C.D.Cal. Sept. 26, 1971).

██ The court is of the opinion that the better rule of law, which has been adopted by the Bankruptcy Court in Minnesota,[3] is to limit nondischargeability to that portion of the loan actually given in reliance upon the false statement, i. e., the new money advanced. The Bankruptcy Act is to be equitably interpreted to accomplish its evident purposes. *Bank of Marin v. England,* 385 U.S. 99, 87 S.Ct. 274, 17 L.Ed.2d 197 (1966). One of the primary purposes of the Bankruptcy Act is to give the debtor "a new opportunity in life and a clear field for future effort, unhampered by the pressure and discouragement of pre-ex-

---

1. Section 17 of the Bankruptcy Act provides as follows:
   *Debts not affected by discharge.*
   a. A discharge in bankruptcy shall release a bankrupt from all of his provable debts, whether allowable in full or in part, except such as . . . (2) are liabilities for obtaining money or property on credit or obtaining an extension or renewal of credit in reliance upon a materially false statement in writing respecting his financial condition made or published or caused to be made or published in any manner whatsoever with intent to deceive, or for willful and malicious conversion of the property of another.

2. It should be noted that Bankruptcy Courts have had exclusive jurisdiction to ascertain the dischargeability of debts only since 1970 amendments to the Bankruptcy Act. Prior to

1960, state courts had exclusive jurisdiction to determine nondischargeability. Of the state courts that have addressed this issue, a slight majority held that the entire debt was nondischargeable. *See* Leading Case Commentary, 46A, Bankr.L.J. 245, 148–49 (1972). The 1970 amendment "obviates the need to either choose, reconcile or refer to state law in this area." *In re Ellis,* 400 F.Supp. 1112, 1117 (S.D. N.Y.1972).

3. The Bankruptcy Court in Minnesota has adopted and applied this rule ever since it became vested with jurisdiction to determine the dischargeability matters by the 1970 amendment of the Bankruptcy Act. See the well reasoned opinion in *In re McGlynn,* No. 4–74 BKY 925 (Sept. 14, 1976).

isting debt . . ." *Local Loan Co. v. Hunt,* 292 U.S. 234, 244, 54 S.Ct. 695, 699, 78 L.Ed. 1230 (1934). To effectuate this purpose, the liability excluded from discharge under Section 17a(2) should be construed as a tort liability, and the damages resulting should be so measured. See, e. g., *In re Ellis, supra; In re Soika, supra; In re Ross,* 47 Am.Bankr.L.J. 77 (S.D.N.Y.1972).

Thus the decision of the Bankruptcy Judge will be affirmed.

Upon the foregoing,

IT IS ORDERED That the decision of the Bankruptcy Judge discharging the refinanced portion of the debt is affirmed.