In re Braxton Lamont CARTER, Debtor.

**FIRST AMERICAN NATIONAL BANK, Plaintiff,**

v.

**Braxton Lamont CARTER, Defendant.**

Bankruptcy No. 379–02339.

Adv. No. 380–0149.

United States Bankruptcy Court,
M. D. of Tennessee.

June 30, 1981.

L. Wearen Hughes, Nashville, Tenn., for plaintiff.

John R. Reynolds, Nashville, Tenn., for defendant.

## MEMORANDUM

RUSSELL H. HIPPE, Jr., Bankruptcy Judge.

This is the second of two opinions by the court dealing with the measure of relief

available to a creditor under the fraud exception to the discharge of § 523(a)(2) of the Bankruptcy Reform Act of 1978 which provides as follows:

(a) A discharge under section 727, 1141, or 1328(b) of this title does not discharge an individual debtor from any debt—

. . . .

(2) for obtaining money, property, services, or an extension, renewal, or refinance of credit, by—

(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition; or

(B) use of a statement in writing—

(i) that is materially false;

(ii) respecting the debtor's or an insider's financial condition;

(iii) on which the creditor to whom the debtor is liable for obtaining such money, property, services, or credit reasonably relied; and

(iv) that the debtor caused to be made or published with intent to deceive; . . . .

11 U.S.C. § 523(a)(2) (1979).

In the other opinion the court considered the measure of relief available under subsection (A) and concluded that the creditor was entitled to recover compensatory damages proximately caused by the fraud measured by the benefit-of-the-bargain rule. *Castner Knott Co. v. Wilson,* 12 B.R. 363 (Bkrtcy. M.D. Tenn., 1981). In this proceeding the court must determine the measure of relief available under subsection (B).

At the conclusion of the hearing the court announced its decision that each of the four elements set out in subsection (B) had been established by the proof with respect to a note executed by the debtor on July 5, 1979.[1] The principal amount of $7,172.13 represented the balance owed to the plaintiff bank on a past-due note which the debtor requested that he be permitted to renew. At the time, his liabilities exceeded his assets. At the request of the bank, he prepared a financial statement on which he indicated a positive net worth by omitting a debt to another bank in excess of $20,000. Bank officers testified that they relied on this statement in permitting the debtor to renew this obligation by execution of the July 5, 1979, note, which they would not have done if they had known the truth. The size of the omitted debt in relation to the debtor's assets ($28,000) convinced the court that it was omitted from the financial statement with the requisite intent to deceive.

No additional funds or "fresh cash" were advanced to the debtor in reliance upon the false financial statement. The bank has not suggested that any damages were caused by this fraudulent conduct. The debtor testified that if this obligation had not been renewed in July 1979 he simply would have filed his bankruptcy petition then instead of in December of that year. There is no indication in the record nor has there been any insistence on the part of the bank that its prospects of having this obligation paid would have been enhanced if it had not been renewed. Not having been damaged by the debtor's fraudulent conduct, the bank is not entitled to compensatory relief. As this court recently concluded in *Wilson,* compensatory relief is available to defrauded creditors under subsection (A). Is a different measure of relief—one which is punitive rather than compensatory—applicable under subsection (B)?

Pertinent to the resolution of this issue is the history of the false-financial-statement provisions of the Bankruptcy Act of 1898, as amended, the decisions construing those provisions, as well as the language of § 523(a)(2)(B) of the Reform Act and its legislative history. The court is unaware of any reported decisions addressing this issue under the new Reform Act.

Fraudulent use of a false financial statement was added to § 14(c) of the old Act as a ground for denial of discharge by a 1903

---

1. The debtor was obligated to the plaintiff bank on two notes. At the hearing the court concluded that there had been no fraudulent representations made with respect to the second note upon which the bank had relied. Thus, the bank is not entitled to relief as to that note.

amendment. Act of Feb. 5, 1903, Pub.L. No. 62, § 4, 32 Stat. 797. The thrust of that provision was to penalize bankrupts rather than compensate creditors. Bankrupts were denied discharge from any debts regardless of the extent to which any creditors may have been damaged by the statement. Creditors benefitted who had never even seen it. Although not specifically mentioned, fraudulent use of such statements also was a ground for excepting individual debts from the discharge under the fraud exception of § 17(a)(2) of the old Act. False-financial-statement dischargeability litigation occurred in state courts until their jurisdiction to determine such issues was withdrawn by a 1970 amendment to the Act. When a prior obligation had been renewed in reliance on such a statement, the state courts were divided as to the measure of relief under § 17(a)(2). Some excepted the entire debt from the discharge, including the renewed portions as well as any "fresh cash" that may have been advanced. Others concluded in effect that the injured creditor was only entitled to recover compensatory damages caused by the fraud and limited relief to the "fresh cash" advanced to the debtor. Townsend, *"Fresh Cash"—Another Element of a Bankrupt's "Fresh Start"?*, 31 U. Miami L.Rev. 275 (1977).

In 1960, by the so-called Celler Amendment, the false financial statement was deleted from § 14(c) as a ground for denial of discharge except when used in connection with business transactions. At the same time Congress also amended § 17(a)(2) to include a specific reference to such statements so that there was excepted from the discharge

> liabilities for obtaining money or property by false pretenses or false representations, *or for obtaining money or property on credit or obtaining an extension or renewal of credit in reliance upon a materially false statement in writing respecting his financial condition made or published or caused to be made or published in any manner whatsoever with intent to deceive,* . . . .

Act of July 12, 1960, Pub.L. No. 86–621, 74 Stat. 409 [language added by amendment emphasized]. The legislative history of this amendment contains the following statement of the reason for these changes:

> The committee believes that complete denial of a discharge is too severe a penalty in the case of the individual noncommercial bankrupt. It is also a penalty which experience has shown to be subject to abuse. An unscrupulous lender armed with a false financial statement has a powerful weapon with which to intimidate a debtor into entering into an agreement in which the creditor agrees not to oppose the discharge in return for the debtor's agreement to pay the debt in full after discharge. The creditor may also accomplish his purpose of preserving his debt by not opposing the discharge and then suing in a State court on the ground that the debt is not dischargeable. Testimony before the Subcommittee on Bankruptcy and Reorganization by experts in bankruptcy law indicates that unscrupulous lenders have frequently condoned, or even encouraged, the issuance of statements omitting debts with the deliberate intention of obtaining a false agreement for use in the event that the borrower subsequently goes into bankruptcy.
>
> Even where the creditor has had no part in the issuance of a false financial statement, the exercise of his right to bar the discharge completely results in a windfall for other creditors who were not even aware of such a statement. Debts which are dischargeable are not discharged solely because one of many debts was induced by a false financial statement. This result is not required to protect a creditor who has relied on a false financial statement since under section 17a(2) that particular debt is not dischargeable.
>
> In view of the protection which section 17a(2) gives to the creditor, and in view of the abuses which have grown out of section 14c(3), the committee believes that it is desirable to eliminate the false financial statement as a ground for the complete denial of a discharge insofar as

the individual noncommercial bankrupt is concerned.

The situation is somewhat different in the case of a business bankrupt. The businessman is more likely to be aware of the severe consequences to him of issuing a false financial statement. His ordinary business records enable him to produce a more accurate statement than a householder who may have a multitude of small debts and no records. Furthermore, the financial statement issued by a businessman is frequently for the purpose of establishing credit standing in the community. His creditors may never see the financial statement itself. On the other hand, the nonbusiness debtor normally issues his financial statement to a particular creditor as part of his application for credit or for a loan. That creditor already has the protection of nondischargeability under section 17.

. . . .

. . . . The purpose of this amendment is to assure that although the obtaining of money or property on credit through the issuance of a false financial statement is no longer to be a ground for denial of a discharge to a nonbusiness bankrupt, *any* obligation incurred as a result of such a statement is to be nondischargeable under section 17.

S.Rep. No. 1688, 86th Cong., 2d Sess. 2–3 (1960); H.R.Rep. No. 1111, 86th Cong., 1st Sess. 2–3 (1959), U.S.Code Cong. & Admin. News 1960, p. 2954, 2955.

Immediately after the passage of this amendment, at least one commentator concluded that its effect was to render the entire debt nondischargeable, including the renewed portion. Note, *Effect of False Financial Statements on Debts Discharged in Bankruptcy—Section 17a(2) of the Bankruptcy Act*, 21 La.L.Rev. 638 (1961). More significantly, four state courts, three of which had previously limited relief under § 17(a)(2) to "fresh cash," also concluded that the effect of the amendment was to render the entire debt nondischargeable, thereby indicating a punitive measure of relief was intended—a carry-over from § 14

but limited in scope to the individual debt. *Household Finance Corp. v. Walters*, 8 Ariz. App. 114, 443 P.2d 929 (1968); *Local Industrial Finance Co. v. McDougale*, 404 S.W.2d 789 (Ky.1966); *Federal Finance Co. v. Merkel*, 65 Wash.2d 379, 397 P.2d 436 (1964); *First Credit Corp. v. Wellnitz*, 21 Wis.2d 18, 123 N.W.2d 519 (1963). These opinions were well reasoned and quite persuasive as to the legislative intent in amending § 17(a)(2) to include a specific provision for false financial statements.

Most federal courts, which have had exclusive jurisdiction to determine dischargeability issues under § 17(a)(2) since 1970, have limited relief, however, to compensatory damages—the "fresh cash" advanced at the time of renewal. *E. g., Household Finance Corp. v. Danns*, 558 F.2d 114 (2d Cir. 1977); *In re Peterson*, 437 F.Supp. 1068 (D.Minn.1966); *Beneficial Finance Co. v. Ellis*, 400 F.Supp. 1112 (S.D.N.Y.1974); *Beneficial Finance Co. v. McNee*, 390 F.Supp. 271 (S.D.N.Y.1975); *In re Fuhrman*, 385 F.Supp. 1185 (W.D.N.Y.1973); *In re Schuerman*, 367 F.Supp. 1347 (E.D.Ky. 1973); *In re Soika*, 365 F.Supp. 555 (W.D.N.Y.1973).

This issue has never been addressed by the Court of Appeals for this circuit, but one of the distinguished bankruptcy judges in the circuit has emphatically rejected the rationale of the state-court opinions adopting the punitive measure of relief and has urged that relief be limited to "fresh cash." Lee, *Leading Case Commentary*, 46 Am. Bankr.L.J. 245 (1972). The United States District Court for his district has adopted his view. *In re Schuerman, supra.*

The "fresh cash" rule has been applied by the federal courts and has been espoused by Judge Lee in his commentary out of concern for the practice of many finance companies, mandated by state regulatory statutes in many instances, of requiring debtors to renew existing loans when they seek additional cash advances. In almost all of the federal court "fresh cash" decisions the debtors' prior loans had not matured and the debtors had not requested that they be renewed. *See Household Finance Corp. v.*

*Danns, supra; In re Peterson, supra; Beneficial Finance Co. v. Ellis, supra; Beneficial Finance Co. v. McNee, supra; Beneficial Finance Co. v. Allen,* 2 Bankr.Ct.Dec. 1043 (S.D.N.Y.1976) (B.J.); *In re Andrews,* [1970–1973 Transfer Binder] Bankr.L.Rep. (CCH) ¶ 64,376 (E.D.Mich.1972) (B.J.); *In re Reynolds,* 47 Am.Bankr.L.J. 61 (S.D.N.Y. 1972) (B.J.); *In re Birkholz,* [1970–1973 Transfer Binder] Bankr.L.Rep. (CCH) ¶ 64,-169 (W.D.Wis.1971) (B.J.), *aff'd, id.* at ¶ 64,316 (W.D.Wis.1972); *In re Burke,* [1970–1973 Transfer Binder] Bankr.L.Rep. (CCH) ¶ 64,016 (E.D.Tenn.1971) (B.J.).[2]

■ The concern of the federal courts over this renewal practice is certainly valid but does not require adoption of the "fresh cash" rule. The desired result might be reached on other, more appropriate grounds than adopting a compensatory measure of relief. When renewals are forced on debtors, either as a result of finance company policy or state regulation, neither are the renewals *obtained* by the debtor nor do the creditors *rely* on the statements in the renewal process. Debtors only intend to obtain the additional cash advances, not the renewals, and the creditors only rely on the statements in making the advances, not in renewing the prior loans, which are renewed as a consequence of the decision to make the new loans. In such situations, the renewed portion of the debt does not come within the scope of § 17(a)(2) of the old Act or § 523(a)(2)(B) of the new one.

This analysis is consistent with the opinion in *Household Finance Corp. v. Danns, supra,* the only circuit court decision on the issue. That court concluded:

> The burden is on the creditor to prove the exception. Here there was no evidence that the original loan was renewed in reliance on the false representation.

Indeed, HFC seems to say that the original loan was renewed only because state law required that it be consolidated with the new loan of $483. This was not a true extension of the original loan: the record does not show that Danns' original obligations would have fallen due sooner had it not been for the refinancing. Thus, the only credit extended in reliance on Danns' misrepresentation was the additional amount loaned, and HFC can bar discharge only of the $483 plus finance charges thereon.

*Household Finance Corp. v. Danns, supra,* 558 F.2d at 116 (footnote omitted).

At least one court has applied a punitive measure of relief under § 17(a)(2) when the debtor initiated the request for the renewal. In *Municipal Credit Union v. Burton,* 4 Bankr.Ct.Dec. 569 (S.D.N.Y.1978) (B.J.), the debtor requested only a renewal of the existing debt, no "fresh cash." The court excepted the debt from the discharge on the ground that the New York regulatory statute, which required a renewal when "fresh cash" was advanced, had not come into play.

Against the background of these decisions, the Congress enacted the Bankruptcy Reform Act of 1978 deleting the false financial statement as a ground for denial of discharge while retaining it as a ground for excepting a debt from the discharge. There was no discussion of the decision to omit the statement from § 727(a), but there was fairly extensive discussion of the enhanced treatment that it was given in § 523(a)(2)(B). Congress intended the two subsections of § 523(a)(2) to be "mutually exclusive." 124 Cong.Rec. S17412 (daily ed., Oct. 6, 1978) (remarks of Sen. DeConcini). Explicit reference to renewals occurs in the preamble to § 523(a)(2), and a renew-

---

**2.** The creditors in *In re Schuerman, supra,* and in *Domestic Safe Deposit Co. v. Laurence,* 4 Bankr.Ct.Dec. 959 (D.R.I.1978) (B.J.), were finance companies, but the courts did not discuss whether the refinancing had occurred at the creditors' insistence or at the request of debtors in default. Both courts adopted the "fresh cash" rule. In *In re Barlick,* 1 Bankr.Ct. Dec. 412 (D.R.I.1974) (B.J.), the creditor was a small loan company had that renewed an existing loan that was in default without advancing any "fresh cash." Without discussing whether the creditor might have been subject to statutory regulations similar to those discussed in the cases cited in the text, the bankruptcy judge merely adopted the "fresh cash" rule and denied any recovery.

al is intended to be nondischargeable if such was obtained in reliance upon a false financial statement. 124 Cong.Rec., *supra*, at S17412. The legislative history of subsection (B) also indicates that, when state law requires the renewal of existing credit on which there has been no default prior to the extension of further credit, the creditor may be limited to a recovery of the "fresh cash" advanced on the ground that the refinancing was not obtained by the debtor through the use of a false financial statement:

> In many cases, a creditor is required by state law to refinance existing credit on which there has been no default. If the creditor does not forfeit remedies or otherwise rely to his detriment on a false financial statement with respect to existing credit, then an extension, renewal, or refinancing of such credit is nondischargeable only to the extent of the new money advanced; *on the other hand, if an existing loan is in default or the creditor otherwise reasonably relies to his detriment on a false financial statement with regard to an existing loan, then the entire debt is nondischargeable under section 523(a)(2)(B). This codifies the reasoning expressed by the second circuit in In re Danns, 558 F.2d 114 (2d Cir. 1977).*

124 Cong.Rec., *supra*, at S17412 (emphasis supplied).

In the opinion of the court the legislative history of § 523(a)(2)(B) indicates Congressional intent that relief not be limited to "fresh cash," or compensatory damages, when a renewal of existing debt is requested by the debtor. This intention was implemented in the specific language of subsection (B) by the omission from the elements required for relief of a showing of damage caused by the use of the false financial statement. For relief under the fraud exception of § 17(a)(2) of the old Act, federal courts uniformly required that creditors establish all the elements required for relief in fraud cases generally, including damages proximately caused by the fraud.[3] *E. g., California State Employees' Credit Union No. 6 v. Nelson,* 561 F.2d 1342 (9th Cir. 1977); *Public Finance Corp. v. Taylor,* 514 F.2d 1370 (9th Cir. 1975); *Sweet v. Ritter Finance Co.,* 263 F.Supp. 540 (W.D.Va. 1967); *Beneficial Finance Co. v. Allen, supra,* 2 Bankr.Ct.Dec. at 1045. This continues to be required for relief under § 523(a)(2)(A) of the Reform Act. *E. g., Fournet v. Miller,* 2 C.B.C.2d 849, 5 B.R. 424 (Bkrtcy. W.D.La.1980). Section 523(a)(2)(B) requires all of these elements with the notable exception of damages.

As a general rule of statutory construction, a change in the language of a statute indicates persuasively that a departure from the old law was intended. 73 Am.Jur.2d *Statutes* § 236 (1974). Likewise, although it is not to be presumed that the legislature intended to abrogate or modify a common-law rule by the enactment of a statute upon the same subject, when a statute undertakes to provide for a specific matter or thing already covered by a common-law rule, omissions in its provisions of certain portions of the rule may be taken as indicative of a legislative intent to repeal or abrogate the same, although in all other respects the statute and common law are in exact conformity. 73 Am.Jur.2d *Statutes, supra,* § 185; *see generally* 3 J. Sutherland, Statutes and Statutory Construction §§ 61.-01, 61.04 (4th ed. 1973). Moreover, the maxim *expressio unius est exclusio alterius* ("the expression of one thing implies the exclusion of another thing"), while not a principle of law, is a rule of thumb to interpreting legislative intent. *Equal Employment Opportunity Comm'n v. Kimberly-Clark,* 511 F.2d 1352, 1362 (6th Cir.), *cert. denied,* 423 U.S. 994, 96 S.Ct. 420, 46

---

**3.** To obtain relief under the false-representations clause of § 17(a)(2), a creditor was required to prove all of the following six elements: (a) that money or property was obtained; (b) that the debtor made the representations; (c) that at the time the bankrupt knew they were false; (d) that the bankrupt made them with the intention and purpose of deceiving the creditor; (e) that the creditor relied on such representations; and (f) that the creditor sustained the alleged loss and damage as the proximate result of the representations having been made. *E. g., In re Houtman,* 568 F.2d 651 (9th Cir. 1978).

**998**

L.Ed.2d 368 (1975); *see also* 2A Sutherland, Statutory Construction, *supra*, §§ 47.24, 47.-25. Application of this maxim requires a court to exclude from the operation of a statute those items not included in a list of elements that are given effect expressly by the statutory language. *Williams v. Wohlgemuth*, 540 F.2d 163, 169 n.30 (3d Cir. 1976). Implicit in the exclusion of the damage element from subsection (B), therefore, is the legislative intention to provide relief under that subsection which is not limited to compensatory damages which may be recovered under subsection (A).

In considering the measure of relief available to the defrauded creditor under subsection (A) in *Wilson*, this court concluded that once a creditor has carried the substantial burden of showing that a debt comes within the fraud exception to discharge and thereby has established the debtor's dishonesty as to that debt, debtor rehabilitation policy considerations are not applicable for the purpose of restricting the scope of relief. Because the Congress had not expressed its intent as to the appropriate measure of relief under subsection (A), or its predecessor under the old Act, other than by the adoption of the exception itself, this court looked to other bankruptcy law policy considerations in arriving at the appropriate measure of compensatory relief. With respect to subsection (B), however, Congress has expressed its intention as to the applicable measure of relief.

The alternatives available to the court are to either apply a punitive measure of relief under subsection (B) or simply to ignore it altogether. The latter is not a viable alternative. In § 523(a)(2)(B), Congress has retained the last punitive sanction to be imposed upon dishonest debtors for the fraudulent use of false financial statements. Congress has chosen to delete such statements as a ground for denial of discharge but is not prepared to accord the fraudulent use of such statements the same treatment as other types of fraud.

■ For the foregoing reasons, the court concludes that, when a debtor obtains a renewal of an existing debt by use of a false financial statement upon which the creditor reasonably relied, the measure of relief available to the defrauded creditor under § 523(a)(2)(B) is punitive—not compensatory—and the full amount of the renewed debt is nondischargeable.

An appropriate order will be entered.