(No. 7249.   November 28, 1945.)

HARRIET W. LYON, Appellant, v. HAWKIN MELGARD, Respondent.

[163 P. (2d) 1019.]

J. H. Felton for appellant.

Laurence E. Huff and Verner R. Clements for respond-ent.

AILSHIE, C.J.—Appellant, a widow and practical nurse, seventy years of age, had lived in Idaho for fifteen years. Mr. Coleman, a widower, "upwards of eighty years old", "in his nineties", had also resided in the state for many years. His health was not good; he had heart trouble. His nearest relatives were nephews and nieces, none of whom lived near him. From about February 15, 1942, to December 4, 1943, (on which date Mr. Coleman died) appellant was employed by him as his housekeeper and to care for him when he was sick. From public assistance she received a pension and from Mr. Coleman, for the first year, $14.95 "a month", which she spent for food. "The last year he stopped in May or June, and he didn't pay any more."

Among various property interests, Mr. Coleman had his home in Moscow and owned a boathouse on Lake Pend d'Oreille, "a nice comfortable home" where he usually spent a few weeks during the summer. Appellant looked after him while he was at the Lake as well as at his Moscow home. Various friends and neighbors of his so testified.

November 23d, 1943, Coleman had a check drawn on the First Trust and Savings Bank of Moscow, payable to appellant, which check was made in the presence of respondent and Coleman. It is appellant's contention that the check was for $8,000.00 and respondent's contention that the check was for $500.00. This check was held in respondent's safety deposit box in the bank for three days, at which time (November 26th) respondent issued a cashier's check in lieu of the check signed by Coleman. The same date the check was indorsed by appellant and cashed December 14th and deposited in appellant's checking account .

Thereafter this action on the check was filed and tried in the district court before a jury and judgment was rendered in favor of the defendant (respondent herein) and against plaintiff (appellant herein). On appeal to this court the appellant has made a great number of assignments of error.

■ It is alleged that the lower court erred in commenting on evidence, in reprimanding appellant's counsel, and threatening to punish appellant for contempt of court while testifying on the witness stand. However, no exception was taken to these rulings and comments and, under a uniform line of authorities in this state, we are precluded from considering or passing on such questions. (*State v. Chambers*, 9 Ida. 673, 682, 683, 75 P. 274; *McKissick v. O. S. L. Ry. Co.*, 13 Ida. 195, 201, 89 P. 629; *Nave v. McGrane*, 19 Ida. 111, 127, 113 P. 82; *Goldstone v. Rustemeyer*, 21 Ida. 703, 707, 123 P. 635.)

The assignments of error, which we feel constitute the real gist of this appeal, are divided into two principal groups: First, the error of the court in refusing to issue an order permitting inspection of the check a sufficient length of time before trial to enable appellant to have a proper examination made by an expert. Secondly, errors in the adverse rulings in the admission of certain evidence and rejection of other evidence.

Appellant appears to place her chief reliance on the alleged error of the court in refusing to enter an order directing that the five hundred dollar check be deposited with the clerk of the court, "or in some other suitable place as may be determined by this Court, until such time

as the plaintiff can reasonably obtain scientific assistance and make a full and complete examination thereof." Motion was made May 23, 1944. No action appears to have been taken on this motion by the court until December 14, '44. In the meanwhile, defendant had the document examined by Donald S. McCall, of Pullman, Washington, member of the faculty of the Washington State College, whose testimony is as follows:

"Q. Could you give us the approximate date that you had possession of that check? A. That was on *December 12, 13th, and 14th.* . .

"Q. What sort of ink is on the front of that document,—the questioned document? A. I didn't make an examination of the ink. As I stated before I was only requested to make an examination for alterations.

"Q. That is all you made an examination for.

"A. And subsequently if there was an over-writing, —which was first, the signature or the wavy line? Those are the only two questions I examined it on. . .

"Q. Can you explain to me why two checks written within a minute of each other at the same place, under the same conditions, and in the same position should one be signed Siegle Coleman and one be signed S. Coleman. A. I couldn't answer that either; that isn't a matter of handwriting.

"Q. When did you say this document was sent to you?

"A. On the *12th of December;* the *afternoon of the 12th.* . .

"Q. You think it is impossible as an expert to make such an examination if you couldn't have had the check ahead of time; is that right?

MR. CLEMENTS: I object to that as immaterial and repetition.

THE COURT: Well, you are both repeating on lots of these questions but I've been letting it go.

MR. FELTON: I have one more question, your Honor, and then I will be through.

"Q. How long did it take you to make your examination?

"A. I examined that Thursday and Friday and took my photographs on Saturday and developed them and printed them Saturday and Sunday.

"Q. Then that is how many days? A. That's four days.

"Q. And if you hadn't had it for those four days you couldn't have made a full examination.

"A. No, I wouldn't have felt satisfied perhaps. That is just my method of doing the work.

MR. FELTON: That is all." (Italics ours.)

December 4, 1944, the court set the case for trial December 18th, and, December 14th, the court made an order for inspection as follows:

"IT IS HEREBY ORDERED that the defendant permit the plaintiff or her attorney, J. H. Felton, upon demand between the hours of 9 A.M. and 5 P.M. on December 16th, 1944, to inspect at the defendant's place of business, in Moscow, Idaho, that certain check made by Seigle Coleman to Harriet W. Lyon or Harriet Lyon and dated the 23rd day of November, 1943, which forms the basis of this action.

"The inspection must be allowed for a reasonable time, and J. H. Felton may have one or two persons present with him at such inspection, but no chemical tests may be made nor shall there be any alteration or defacement of the instrument."

The $500 check was introduced in evidence by defendant and nineteen other checks bearing S. Coleman's signature, written during the month of November, '43, the month in which the questioned document was written, were introduced by defendant, apparently as exemplars. November 23, '43, three checks were signed by Coleman: One for Harriet Lyon, one to Leola R. King, County Treasurer, (both of these written by Melgard); the third check written and signed by Coleman, made payable to Eric G. Osterberg. All checks by Coleman were signed "S. Cole-

man", except the one to Mrs. Lyon, which was signed "Seigle Coleman".

It thus appears that appellant sought the inspection of this check by letter March 15, 1944, then by motion addressed to the court, and continued to urge the allowance of such inspection until the date of the trial; whereas, the defendant had the check in his possession all the while. It should be remembered that this check was not the personal property of the defendant, Melgard, but rather belonged to the estate of Seigle Coleman if paid. Under the provisions of sec. 12-302, I.C.A., appellant was clearly entitled to an order for inspection of the document involved in the case. (*McClatchy Newspapers v. Glenn* (Cal. App.), 144 P. (2d) 885, 893.)

It will be observed, from the foregoing, that the order permitting inspection was made only four days before the case was called for trial and was limited to the hours of "9 A.M." to "5 P.M." of the 16th of December, at respondent's place of business, only two days before the trial started. It does not appear why the issuance of the order was delayed. In view of the circumstances surrounding the making and issuance of the check, the seeming changes in the making of, and signature to, the same, and other physical facts and circumstances, we feel that appellant did not have a fair opportunity to have the document examined by a handwriting expert and to avail herself of such testimony. While appellant might have taken the deposition of a handwriting expert, either in the state or outside the state, such deposition would have been of no material value without the presence of the questioned document, so that the witness could examine it and state his reasons for any opinion he might entertain concerning the document.

It is strange that, while appellant was clamoring for the privilege of having the check sent to Portland and examined by Stanley McDonald, nevertheless, during the same time, respondent sent the check down there and received an opinion from the same Stanley McDonald and then resisted appellant's application for the privilege of submitting the document *to the same man for his opinion.*

It further appears that, after Stanley McDonald had seen the check, counsel for plaintiff and defendant,

by agreement, talked with McDonald over the telephone and he gave them a statement, which appellant's counsel offered to introduce in evidence at the trial and which was rejected on objection by defendant, which raised the presumption that McDonald's opinion was adverse. (*Bedke v. Bedke,* 56 Ida. 235, 240, 53 P. (2d) 1175; *Coeur d'Alenes Lead Co. v. Kingsbury,* 59 Ida. 627, 634, 85 P. (2d) 691; *Federal Land Bank of Spokane v. Union Central L. Ins. Co.,* 51 Ida. 490, 499, 6 P. (2d) 486; *Houser v. Austin,* 2 Ida. 204, 213, 10 P. 37; 20 Am. Juris., sec. 183, p. 188.) It also appears that appellant offered to dismiss his case if McDonald's opinion sustained the defendant's (respondent's) position.

It was error for the court to deny plaintiff the right to cross-examine defendant concerning the execution of the check, certain markings and numbers appearing thereon, and the general circumstances under which the check was made. It must be remembered, that plaintiff and defendant were the only living persons who knew anything personally of the execution of the check and the circumstances surrounding its execution; and so the court should have allowed a liberal, wide scope of cross-examination of these witnesses, including attendant circumstances.

It was also error to refuse to allow plaintiff's question of defendant concerning his possession of checks signed by Coleman in blank.

Since the issue involved before the court and jury was whether or not Seigle Coleman on November 23, 1943 made and executed a check in favor of appellant for $8,000, and which, it was alleged, respondent, Melgard, wrongfully prevented being paid; and the action was to recover the difference between the $8,000 check and the $500.00 check, which latter check Melgard did pay to appellant; the court by its instructions Nos. 3 and 4 correctly advised the jury as to the issues involved as follows:

"No. 3. Before you can find in favor of the plaintiff, you must find from a preponderance of the evidence, as hereinafter defined, that Siegle Coleman, on the 23rd of November, 1943, made, or caused to be made, a check upon the First Trust and Savings Bank of Moscow, Idaho, in favor of the plaintiff for the sum of $8,000, and that he

then and there signed the same and requested the defendant, Hawkin Melgard, to cause the same to be paid, and that thereafter the defendant, Hawkin Melgard, wrongfully prevented said $8,000 check from being paid or the plaintiff receiving the proceeds of said $8,000 check, and unless you so find, then your verdict should be for the defendant.

"No. 4. You are further instructed that whether or not the deceased Siegle Coleman promised to give the plaintiff the sum of $8,000 or whether she was entitled to that sum, or any other sum, for services rendered to the said Siegle Coleman during his lifetime, is not an issue in this case, as recovery in such case would have to be by a proper action against the estate of Siegle Coleman."

The judgment is reversed and the cause remanded with direction to grant a new trial. Costs awarded to appellant.

Budge, Givens, Holden and Miller, JJ., concur.