436 P.2d 722

**BUDGET FINANCE PLAN, a corporation, Plaintiff-Respondent,**

v.

**Charles F. HANER and Minnie Haner, husband and wife, Defendants-Appellants.**

**No. 9937.**

Supreme Court of Idaho.

Jan. 30, 1968.

Robert F. McLaughlin, Mountain Home, for appellants.

Cosho & Humphrey, Boise, for appellee.

SPEAR, Justice.

This is an appeal from a judgment in favor of plaintiff-respondent on a promissory note in the sum of $559.20 together with accrued interest at 6% and court costs.

Respondent, Budget Finance Plan, brought this action to recover the face value of a promissory note signed by appellants on October 30, 1964. On the basis of a financial statement prepared during this transaction, a loan of $70.00 was executed in favor of the appellants together with the renewal of a previously existing note in the amount of $489.20. At the time of this action, no payment had been made on the new note.

Thereafter on December 20, 1964, respondent received notice that appellants had petitioned for voluntary bankruptcy on the 2nd day of December, 1964. Respondent did not file a claim in bankruptcy, but a few months after appellants' discharge in bankruptcy, wherein the obligation on this note purportedly was discharged, respondent brought suit upon the promissory note in the district court.

Respondent's claim was grounded on the contention that the promissory note had been obtained on the basis of a materially false financial statement, and that relying on this statement, respondent had been induced to make the $70.00 loan and renew the previous one. Respondent contended that had it known appellants' true financial

58

situation, as declared in their actual schedule of debts in the bankruptcy petition, such a loan would never have been made.

The only witness was Richard Crettol, manager of Budget Finance operations in Caldwell, who testified that on the evening of October 30, 1964, appellants came to his office and applied for an additional loan to facilitate their Christmas shopping. Appellants had had a number of accounts with this office in the past, and as it was too late in the evening to run a check on their credit, he drew up the papers, relying upon what appellants represented in a financial statement at that time (Plaintiff's Exhibit 2).

The regularly signed financial statement contains four entries totaling $27,098.40, at the bottom of which is a specially typed-in notation, "we have no other debts." Crettol testified he specifically requested this to make sure that all debts had been properly listed. Thereafter the promissory note was executed including the amount of a previous loan—$489.20, and $70.00 in cash.

On December 20, 1964, respondent received notice of appellants' petition in bankruptcy. Respondent then submitted a letter requesting the actual schedule of debts declared by appellants in their petition, which schedule was admitted into evidence as Plaintiff's Exhibit 3. This document contains 24 separate entries, nine listings of secured obligations totaling $9,106.64 and 15 for unsecured obligations totaling $35,847.00 or total indebtedness of nearly $45,000.00. Crettol testified that had he known appellants' true financial position, he never would have made the loan.

On cross-examination, counsel attempted to elicit testimony showing that Crettol, through previous business dealings and company records, was well aware of those obligations which did not appear on the financial statement. However, Crettol denied having knowledge of the numerous obligations appearing on the bankruptcy schedule. He testified that on the basis of the discrepancies appearing in the bankruptcy schedule and the short lapse of time

between the loan and appellants' petition, this transaction had been fraudulent. He further testified that the fact that one or two of these obligations did not appear on the financial statement might not have caused him to reject the loan, but if all these discrepancies were lumped together, there would be no doubt this loan would not have been authorized.

Further testimony revealed that at the time this loan was granted Crettol did refer to a previous financial statement appellants had submitted in connection with their last loan wherein two of the obligations appearing on the bankruptcy schedule were likewise listed in that earlier statement. However, he made no inquiry into these matters as they were not listed on the later statement.

Counsel then introduced into evidence the loan application appellants had filled out in connection with this previous loan and financial statement (Defendant's Exhibit 5). Mr. Crettol testified such an application is normally filled out prior to the financial statement so that the company may check on a client's assets and credit rating. However, with reference to the loan of October 30, such an application was not forthcoming until several days after the financial statement, and Crettol relied solely on the statement as the basis for the loan. Thus only after the loan was made did Crettol notice a variance between the data on the application and the statement relative to appellants' existing obligations.

From the foregoing appellants contend that the trial court erred in finding that the financial statement was "materially false" because there is no direct evidence in the record to substantiate the existence of any of those debts listed in the schedule at the time of execution of the statement on October 30, 1964.

The record is clear that at least two of the obligations left unreported were already in existence prior to the date in question since they appeared on appellants' previous loan application (Exhibit 5, supra).

■ Moreover, appellants' position is further weakened by the applicable rule that where a party possessed of knowledge of a matter does not produce such evidence, there is a presumption that if he did so it would be adverse to his side. Lyon v. Melgard, 66 Idaho 599, 163 P.2d 1019 (1945); Lea v. Galbraith, 64 Idaho 724, 137 P.2d 320 (1943); Coeur D'Alenes Lead Co. v. Kingsbury, 59 Idaho 627, 85 P.2d 691 (1938). This presumption is also fortified by the fact that appellants filed their petition in bankruptcy on December 2, 1964 —a period of less than five weeks from October 30—wherein they would have had to incur credit obligations in excess of $17,800.00. See United Credit Plan Inc. v. Seminary, 162 So.2d 807 (La.Ct.App.1964).

■■ Appellants contend that the fraudulent misrepresentations relied upon by the respondent must be firmly established by clear and convincing evidence, i. e., a higher degree of proof than merely a preponderance; and that the evidence adduced at the trial herein is insufficient to sustain the judgment of the trial court. It is true that such a criterion is insisted upon in cases involving actions to set aside or rescind a written document or causes for recovery of damages for fraud. This is not such a cause. Here the respondent merely sought a money judgment for a debt owed based upon a written instrument. A preponderance of the evidence supporting respondent's contentions that the money was loaned in reliance upon a materially false statement in writing respecting the financial condition of the appellants is sufficient. Household Finance Corp. v. Altenberg, 5 Ohio St.2d 190, 214 N.E.2d 667 (Ohio, 1966). The evidence introduced by respondent with the inferences therefrom, hereinbefore delineated, established a prima facie case removing the indebtedness from the effectiveness of the bankruptcy discharge. The burden then shifted to the appellants to disprove this prima facie case. Appellants introduced no evidence whatsoever, so obviously they were unsuccessful in this respect. United Credit Plan, Inc. v. Seminary, 162 So.2d 807 (La.Ct.App.1964); Tower Finance Corporation v. McLarning, 83 Ill. App.2d 250, 227 N.E.2d 375 (1967); M–A–C Loan Plan, Inc. v. Crane, 4 Conn.Cir. 29, 225 A.2d 33 (1966); Beneficial Finance Co. of Charleston v. Collins, 149 S.E.2d 221 (W.Va.1966); Advance Loan Co. v. Bell, 75 N.M. 204, 402 P.2d 944 (1965); H. A. Company of Provo v. Campbell, 17 Utah 2d 401, 413 P.2d 595 (1966). The evidence is ample to support the judgment of the trial court.

■ Appellants next argue that respondent is guilty of laches in failing to seek relief in the bankruptcy proceeding. However, the Bankruptcy Act, 11 U.S.C. § 35 (a) (2) provides to the contrary. This section reads in pertinent part:

"(a) A discharge in bankruptcy shall release a bankrupt from all of his provable debts, whether allowable in full or in part, except such as * * * (2) are liabilities for obtaining money or property by false pretenses or false representations, *or for obtaining money or property on credit or obtaining an extension or renewal of credit in reliance upon a materially false statement in writing respecting his financial condition made or published or caused to be made or published in any manner whatsoever with intent to deceive* * * *" (emphasis supplied)

It is therefore apparent that respondent's claim is not barred by appellants' discharge in bankruptcy. Weigand v. Furniss, 85 Idaho 189, 377 P.2d 371 (1962); 9 Am.Jur. 2d Bankruptcy § 780 (1963); 8B C.J.S. Bankruptcy § 573(a) (1963); Federal Finance Co. v. Merkel, 397 P.2d 436 (Wash. 1964).

■ Finally, appellants contend that the extent of their liability should be limited to $70.00 since that was the amount of money actually advanced pursuant to the financial statement. However, the 1960 amendment to § 35(a) (2) of the Bankruptcy Act (italics, supra) provides that one who obtains an extension of credit by means of a

materially false financial statement and who thereafter receives a discharge in bankruptcy is legally responsible for the entire obligation, i. e., renewal as well as new portion of the debt. Federal Finance Co. v. Merkel, supra; Advance Loan Co. v. Bell, supra; First Credit Corp. v. Wellnitz, 21 Wis.2d 18, 123 N.W.2d 519 (1963).

We have carefully considered the other assignments of error relied upon by appellants and find them to be without merit.

Judgment affirmed.

Costs to respondent.

TAYLOR, McQUADE and McFADDEN, JJ., and HAGAN, D. J., concur.