558 F.2d 114
 In re Keith Orin DANNS, a/k/a Keith O. Danns, a/k/a Keith
Danns, Bankrupt.
HOUSEHOLD FINANCE CORPORATION, Plaintiff-Appellant,
v.
Keith Orin DANNS, a/k/a Keith O. Danns, a/k/a Keith Danns,
Defendant-Appellee.
 No. 1135, Docket 77-5004.
 United States Court of Appeals,
Second Circuit.
 Argued May 12, 1977.
Decided June 29, 1977.
 
 Frederick H. Block, New York City (Seymour R. Weinick and Harvey N. Goldstein, New York City, on the brief), for appellant.
 Martin J. Glasser, New York City (Sachs & Spector, P.C., New York City, on the brief), for appellee.
 Scheinberg & Finno, Brooklyn, N. Y., on the brief, for New York State Consumer Finance Association, amicus curiae.
 Kalman Finkel, John E. Kirklin, Anita Fisher Barrett, and Morton B. Dicker, New York City, on the brief, for The Legal Aid Society of New York City, amicus curiae.
 Before CLARK, Associate Justice,* LUMBARD and MESKILL, Circuit judges.
 LUMBARD, Circuit Judge:
 
 
 1
 Household Finance Corporation appeals from a January 17, 1977 decision by Judge Neaher in the Eastern District which affirmed an order by Bankruptcy Judge Parente granting judgment against Keith Danns, the bankrupt, for only a portion of his debt to HFC. Appellant maintains that a false financial statement submitted by a debtor in renewing a loan renders his entire debt nondischargeable under section 17 a(2) of the Bankruptcy Act, 11 U.S.C. § 35(a) (2). We conclude that discharge should be barred only as to that portion of the loan regarding which the misrepresentation was material, and accordingly we affirm.
 
 
 2
 On January 24, 1975, Danns, who was already indebted to HFC for $2019.37, obtained an additional loan of $483, and signed a new note for $3261.96 (which included finance charges) payable over 36 months.[1] At the time Danns listed a debt of $50 to one Gerst as his only other indebtedness, although he actually owed some $14,000 to other creditors.[2] A year later, when Danns filed for bankruptcy, his debt to HFC stood at $2622.
 
 Section 17 a provides:
 
 3
 A discharge in bankruptcy shall release a bankrupt from all of his provable debts . . . except such as . . . (2) are liabilities for obtaining money or property by false pretenses or false representations, or for obtaining money or property on credit or obtaining an extension or renewal of credit in reliance upon a materially false statement in writing respecting his financial condition made . . . with intent to deceive . . . .
 
 
 4
 11 U.S.C. § 35(a) (emphasis supplied). The italicized language was added by Congress in 1960.
 
 
 5
 Prior to 1960 a lender who advanced money based on a false financial statement could choose either to bar discharge of the bankrupt entirely under the then § 14 c(3) and thereby provide a windfall to all the other creditors or to bar discharge of only the debt itself under § 17 a(2). Under the old § 17 a(2) where the debtor obtained an additional loan and signed a new note covering the old balance as well, state courts were split over whether discharge should be barred for the entire loan or only for the "fresh cash." Compare cases cited in Townsend, "Fresh Cash" Another Element of a Bankrupt's "Fresh Start"?, 31 U.Miami L.Rev. 275, 281 n.39 (1977), with cases cited in id. at 281-82 n.40.
 
 
 6
 In 1960, Congress eliminated the old § 14 c(3) and enacted the amendment to § 17 a(2). State courts interpreted this as a compromise whereby the defrauded lender lost the right to bar the bankrupt's entire discharge, but was still to be entitled to a complete bar of discharge on his own claim.[3] However, since Congress gave the federal courts exclusive jurisdiction over dischargeability questions in 1970, see 11 U.S.C. § 35(c)(1), a large majority of federal district courts and bankruptcy referees have concluded that only that portion of the credit obtained as a result of a fraudulent statement should be barred from discharge. See cases cited in Townsend, supra at 284 n.53.[4] Contra, In re Fields, Nos. B-75-443, -444 (D.Conn. Mar. 21, 1977).
 
 
 7
 We think the proper construction of § 17 a(2) is unmistakable. The language of § 17 a(2) bars discharge only of "liabilities for obtaining" extensions of renewals of credit "in reliance upon a materially false statement"; this strongly implies that the creditor should be entitled to bar discharge only of that portion of his loan as was obtained fraudulently. There is nothing in the legislative history of the 1960 amendments to indicate a congressional intent that a bankrupt should be penalized for more than simply the consequences of his fraud.[5] Nor does it seem equitable for a bankrupt to be deprived of discharge on all his indebtedness to a particular creditor simply because a small portion of it was procured dishonestly.[6] Accordingly, since exceptions to discharge are to be narrowly construed, see Gleason v. Thaw, 236 U.S. 558, 562, 35 S.Ct. 287, 59 L.Ed. 717 (1915), we read § 17 a(2) as barring discharge only to the extent that the creditor could actually have relied upon the debtor's misrepresentation.
 
 
 8
 The burden is on the creditor to prove the exception. Here there was no evidence that the original loan was renewed in reliance on the false representation. Indeed, HFC seems to say that the original loan was renewed only because state law required that it be consolidated with the new loan of $483. This was not a true extension of the original loan: the record does not show that Danns' original obligations would have fallen due sooner had it not been for the refinancing. Thus, the only credit extended in reliance on Danns' misrepresentation was the additional amount loaned, and HFC can bar discharge only of the $483 plus finance charges thereon.[7]
 
 
 9
 Judgment affirmed.
 
 
 
 *
 Tom C. Clark, Associate Justice, United States Supreme Court, Retired, sitting by designation
 Mr. Justice Clark had voted to affirm prior to his untimely death on June 13, 1977. Pursuant to § 0.14 of the Rules of this court, this petition is being determined by Judges Lumbard and Meskill.
 
 
 [1]
 New York Banking Law § 352(b) prohibits a small loan company from having more than one loan contract in effect with the same borrower at any one time. Hence HFC was obliged by law to consolidate the old loan of $2019.37 with the new one of $483 and make out a new note for the total amount, plus the finance charges
 
 
 [2]
 The bankruptcy judge found that Danns had acted with intent to deceive when he supplied HFC with the incomplete list of his outstanding debts. This finding is not contested on appeal
 
 
 [3]
 See HFC v. Walters, 8 Ariz.App. 114, 443 P.2d 929 (1968); Budget Finance v. Haner, 92 Idaho 56, 436 P.2d 722 (1968); Local Indus. Finance Co. v. McDougale, 404 S.W.2d 789 (Ky.1966); Liberal Finance Corp. v. Holley, 157 So.2d 376 (La.App.1963); Seaboard Finance v. Barnes, 378 Mich. 627, 148 N.W.2d 756 (1967); Advance Loan Co. v. Bell, 75 N.M. 204, 402 P.2d 944 (1965); Family Finance Corp. v. Lyons, 62 Misc.2d 985, 310 N.Y.S.2d 514 (1970); Federal Finance Co. v. Merkel, 65 Wash.2d 379, 397 P.2d 436 (1964); First Credit Corp. v. Wellnitz, 21 Wis.2d 18, 123 N.W.2d 519 (1963)
 
 
 [4]
 See also Lee, Leading Case Commentary, 46 Am.Bankr.L.J. 245, 248 (1972) (state courts' interpretation of § 17 a(2) was a "colossal error")
 
 
 [5]
 Generally, the 1960 legislative history of § 17 a(2) simply tracks the statutory language. See S.Rep.No.1688, 86th Cong., 2d Sess., in 1960 U.S.Code Cong. & Admin.News, p. 2956 ("(an) obligation incurred as a result of (a false financial) statement to be nondischargeable" (emphasis supplied)); 1960 U.S.Code Cong. & Admin.News, p. 2957 (letter of J. Glassman to Sen. Eastland). The only support for appellant's interpretation is in testimony by a practicing lawyer, which was not acknowledged or acquiesced in by any members of Congress at the hearing. See Hearing on H.R. 106 Before a Subcommittee of the Senate Committee on the Judiciary, 85th Cong., 2d Sess. 102 (1958) (remarks of L. Chapman)
 
 
 [6]
 The rule urged by HFC would encourage unscrupulous lenders making extensions on consumer loans to play down the importance of outstanding debts or even to suggest to the applicant that he write on the application form that he has no other debts. By inducing the naive debtor to make a false statement, the finance company might hope to protect itself against extinguishment of the debt in bankruptcy
 
 
 [7]
 The district court failed to award HFC its finance charges on the $483 fresh cash. However, since the record does not enable us to determine what portion of the finance charges is attributable to the $483, and since HFC has not raised the point on this appeal, we affirm the district court's judgment as it stands