In re Arie BODENSTEIN and Marlene
Bodenstein, Debtors.

FIRST AMERICAN BANK OF
NEW YORK, Plaintiff,

v.

Arie BODENSTEIN and Marlene
Bodenstein, Defendants.

Bankruptcy No. 191–15994–353 (JF).

Adv. No. 192–1169–353 (JF).

United States Bankruptcy Court,
E.D. New York.

June 14, 1994.

Hahn & Hessen by William R. Fabrizio, Maria Arnot, New York City, for First American Bank of New York.

Bizar & Martin by Roy I. Martin, Donald R. Wall, New York City, for Arie Bodenstein.

### DECISION ON EXCEPTION TO DIS-CHARGEABILITY AND OBJECTIONS TO DISCHARGE

JEROME FELLER, Bankruptcy Judge.

This is an adversary proceeding brought by First American Bank of New York ("FABNY") against Arie Bodenstein and Marlene Bodenstein, Defendants, to have certain debt arising from personal guarantees of corporate loans declared nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(B) and to deny the Defendants' discharge pursuant to 11 U.S.C. § 727(a)(4)(A), (a)(5) and (a)(2)(A).[1] After having considered the pleadings, joint pretrial statement, trial testimony, documentary evidence submitted, and each party's post-trial proposed findings and conclusions of law and respective responses thereto, the Court finds that FABNY has failed to sustain its burden of proof under any of its four claims for relief. Accordingly, for the reasons set forth below, the complaint is dismissed.

This decision constitutes the Court's findings of facts and conclusions of law under Fed.R.Bankr.P. 7052.

---

1. The lawsuit was commenced against both husband and wife, Arie Bodenstein and Marlene Bodenstein. At the conclusion of the trial the complaint against Mrs. Bodenstein was dismissed. Thereafter, Mrs. Bodenstein was granted a discharge in bankruptcy. Any reference herein to "Debtor" or "Bodenstein" is to Arie Bodenstein, while reference to the "Debtors" or "Bodensteins" shall mean both Arie and Marlene Bodenstein.

## I. *BACKGROUND*

The Debtors filed a joint petition for relief under Chapter 7 of Title 11 of the United States Code ("Bankruptcy Code") on September 12, 1991. They were the owners and officers of Archway International Inc. ("Archway"), a now defunct New York corporation which imported and sold camera equipment and supplies. The Debtors list FABNY as a general unsecured creditor on Schedule F of their petition for $257,642.62, which sum constitutes about 99% of their scheduled indebtedness.

The connection of the Debtors to FABNY derives from a lender-borrower relationship between FABNY and Archway established long before the Debtors became personally obligated to FABNY as guarantors. It began during the 1981–1982 period when Mr. Fred Vatter, Jr., the account officer at FABNY in charge of the Archway account, suggested that Archway turn to the bank (then Bankers Trust Company), if Archway needed financing. At that time, Archway operated without any financing or only with short-term financing (loan repayment periods no greater than one month). Bodenstein's view was that bank financing imposed a burden on the business which preferably should be avoided. Thus, initially Archway refrained from obtaining any long term financing. Early in 1983, Bodenstein perceived a need for long term financing when he determined that Archway's business growth could be better achieved with such loans. He found that Archway could not act quickly on market bargains without having the proper financing in place as a source of working capital. Bodenstein then discussed financing with Mr. Vatter.

FABNY conducted an investigation into Archway's credit worthiness, including reviewing Archway's corporate financial statements. No other financial statements were required or reviewed by FABNY at that time. The financial posture of the Bodensteins was of no apparent significance. Satisfied with Archway's credit worthiness, the lending relationship between Archway and FABNY commenced in earnest around February 1983, when FABNY extended credit to Archway. The credit lines were for substan-tial sums, and were evidenced by promissory notes executed by Archway payable to FABNY.

Under Bodenstein's guidance and with FABNY's financing, Archway's business was apparently profitable and grew. The association between Archway and FABNY was healthy and sound, with Archway meeting its obligations to FABNY, and FABNY renewing and increasing the established credit line. In 1987, the Bodensteins assumed personal liability for Archway's obligations.

In or around the spring of 1987, FABNY requested that the Bodensteins provide FABNY with personal guarantees. Consequently, the Debtors executed a Guarantee Agreement dated May 18, 1987, thereby becoming personally obligated to FABNY on Archway's debts. At trial, no evidence was presented reflecting any investigation by FABNY as to the Bodensteins' net worth or their personal ability to pay in the event of Archway's default, when these guarantees where obtained.

Approximately three years later, pursuant to FABNY's request, the Bodensteins provided FABNY with their personal financial statement, dated June 28, 1990 (the "1990 PFS"). FABNY contends that the 1990 PFS was a materially false financial statement, issued with intent to deceive, on which FABNY reasonably relied. The 1990 PFS submitted by the Bodensteins to FABNY included the following assets:

- accounts and notes receivable due from relatives and friends in the amount of $25,000;
- jewelry and furs worth $18,000;
- antiques worth $42,700;
- an investment in real estate worth $175,000;
- real estate in Gnei Modien, Israel worth $35,000;
- life insurance policies, one with a cash value of $28,266.

FABNY renewed a $250,000 loan to Archway in the fall of 1990, as evidenced by a promissory note dated November 1, 1990. Further, FABNY loaned Archway an additional $40,000, as evidenced by a similar

promissory note dated March 28, 1991. In April of 1991, Archway defaulted on the November 1990 note and, about a month later, defaulted on the March 1991 note. On July 24, 1991, FABNY commenced an action in the Supreme Court, State of New York, County of New York, against Archway and the Bodensteins, seeking to recover a money judgment on both notes.

Thereafter, on September 12, 1991, the Bodensteins filed their bankruptcy petition. The automatic stay provided by 11 U.S.C. § 362(a) enjoined FABNY from further state court litigation against the Bodensteins. However, the suit against co-defendant Archway continued unimpeded and, in March 1992, FABNY obtained a judgment against Archway in the amount of $247,192.93. Realizing that it was unable to collect on its judgment against Archway, FABNY commenced an adversary proceeding against the Debtors by filing a complaint seeking to have the debt represented by the personal guarantees of the Debtors declared nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(B) and objecting to the Debtors' discharge under 11 U.S.C. § 727(a)(4)(A), (a)(5) and (a)(2)(A) (the "Complaint").

## II. *GENERALLY APPLICABLE PRINCIPLES*

■ A fundamental objective of the bankruptcy law is to afford a deserving debtor an economic rehabilitation or "fresh start" in life. This policy was probably best articulated in the following off-quoted observation of Justice Sutherland:

> One of the primary purposes of the bankruptcy act is to 'relieve the honest debtor from the weight of oppressive indebtedness, and permit him to start afresh free from the obligations and responsibilities consequent upon business misfortune.' This purpose of the act has been again and again emphasized by the court as being of public as well as private interest, in that it gives the honest but unfortunate debtor ... a new opportunity in life and a clear field for future effort, unhampered by the pressure and discouragement of pre-existing debt. [Citations omitted].

*Local Loan Co. v. Hunt,* 292 U.S. 234, 244, 54 S.Ct. 695, 699, 78 L.Ed. 1230 (1934) (*quoting Williams v. United States Fidelity & Guaranty Co.,* 236 U.S. 549, 554–55, 35 S.Ct. 289, 290, 59 L.Ed. 713 (1915)). *See, Lines v. Frederick,* 400 U.S. 18, 19, 91 S.Ct. 113, 114, 27 L.Ed.2d 124 (1970); *Perez v. Campbell,* 402 U.S. 637, 648, 91 S.Ct. 1704, 1710, 29 L.Ed.2d 233 (1971); *Grogan v. Garner,* 498 U.S. 279, 286, 111 S.Ct. 654, 659, 112 L.Ed.2d 755 (1991).

■ On the other hand, this fresh start policy is tempered by an equally important objective and that is to prevent the "dishonest debtor's attempt to use the law's protection to shield his or her wrongdoing." *National Bank of Am. v. Newmark (In re Newmark),* 20 B.R. 842, 852 (Bankr.E.D.N.Y. 1982). Thus, the Bankruptcy Code provides that certain debts are excepted from discharge and that a debtor may be denied a discharge from all of his debts under specific and well defined circumstances. *See* 11 U.S.C. § 523(a)(2), (4) and (6) and 11 U.S.C. § 727(a)(2)—(a)(7).

■ In balancing these objectives, courts adhere to certain guiding principles in assessing dischargeability and discharge objections under 11 U.S.C. §§ 523(a) and 727(a). One of these widely recognized tenets is that exceptions under 11 U.S.C. § 523(a) should be literally and strictly construed against the creditor and liberally in favor of the debtor. *Boyle v. Abilene Lumber, Inc. (In re Boyle),* 819 F.2d 583, 588 (5th Cir.1987); *Driggs v. Black (In re Black),* 787 F.2d 503, 505 (10th Cir.1986); *Schweig v. Hunter (In re Hunter),* 780 F.2d 1577, 1579 (11th Cir.1986); *See also Household Fin. Corp. v. Danns (In re Danns),* 558 F.2d 114, 116 (2d Cir.1977); *Gleason v. Thaw,* 236 U.S. 558, 562, 35 S.Ct. 287, 289, 59 L.Ed. 717 (1915). Similarly, objections to discharge under 11 U.S.C. § 727 are to be literally and strictly construed against the creditor and liberally in favor of the debtor. *Commerce Bank & Trust Co. v. Burgess (In re Burgess),* 955 F.2d 134, 137 (1st Cir.1992); *First Beverly Bank v. Adeeb (In re Adeeb),* 787 F.2d 1339, 1342 (9th Cir.1986); *Devers v. Bank of Sheridan Montana (In re Devers),* 759 F.2d 751, 754 (9th Cir.1985).

The burden of proving that a debt comes within one of the statutory exceptions to dischargeability is upon the party opposing discharge of the debt. *Benich v. Benich (In re Benich)*, 811 F.2d 943, 945 (5th Cir. 1987); *Farina v. Balzano (In re Balzano)*, 127 B.R. 524, 529 (Bankr.E.D.N.Y.1991); *Smith v. Meyers (In re Schwartz & Meyers)*, 130 B.R. 416, 422 (Bankr.S.D.N.Y.1991). Similarly, the burden of proof to sustain an objection to discharge is on the plaintiff. Fed.R.Bankr.P. 4005.

The quantum of evidence necessary to sustain a statutory exception to dischargeability is a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. at 287, 111 S.Ct. at 661; *In re Schwartz & Meyers*, 130 B.R. at 422; *In re Balzano*, 127 B.R. at 529. The preponderance of evidence standard also applies to complaints objecting to discharge. *Beaubouef v. Beaubouef (In re Beaubouef)*, 966 F.2d 174, 178 (5th Cir.1992); *Nisselson v. Wolfson (In re Wolfson)*, 152 B.R. 830, 832 (S.D.N.Y.1993); *Minsky v. Silverstein (In re Silverstein)*, 151 B.R. 657, 660 (Bankr. E.D.N.Y.1993).

Although the burden of proof or persuasion must be borne by a plaintiff seeking to sustain an exception to dischargeability or an objection to discharge, once sufficient evidence is presented by the plaintiff to satisfy the burden of going forward with evidence, the burden thereafter shifts to the debtor to provide evidence to rebut the plaintiff's *prima facie* case. The plaintiff, however, must bear the ultimate burden of proof or persuasion by proving by a preponderance of evidence the essential elements of an alleged exception to dischargeability or objection to discharge.

## III. *FIRST CLAIM FOR RELIEF—11 U.S.C. § 523(a)(2)(B).*

Bankruptcy Code § 523(a)(2)(B) excepts from discharge certain debts incurred by use of a false written statement respecting a debtor's financial condition. To meet its burden of proof, a creditor must show that the debt was obtained by use of a statement in writing i) that is materially false; ii) respecting the debtor's or an insider's financial condition; iii) on which the creditor to whom the debtor is liable for money, property, services or credit reasonably relied; and iv) that the debtor caused to be made or published with intent to deceive. Each of the elements of § 523(a)(2)(B) must be proved.

The Complaint alleges that the 1990 PFS reflected ownership of real estate assets in which the Debtors had no ownership. The 1990 PFS listed property located in Gnei Modien, Israel with an appraised value of $35,000 ("Israel Property"). The Complaint charges that the Debtors have no deed or other instrument to verify an ownership interest in the Israel Property. The Israel Property was purchased by a group of eight or nine people. Thus, the Complaint further charges that even if the Debtors could establish an interest in the Israel Property, the value which should have been stated would be an appropriate fraction of the appraised value, and not the entire $35,000 reported on the 1990 PFS. In addition, the Complaint asserts that the Debtors falsely claim ownership of real estate investment property—an upstate New York bungalow colony located in the Catskill mountains ("Catskill Property")—with a value of $175,000 on the 1990 PFS. By submitting a financial statement inaccurate as to the Israel and Catskill Properties, it is alleged that the Debtors were extended credit by FABNY based on a writing that was materially false with respect to their financial condition, and that the Debtors caused the financial statement to be made with the intent to deceive FABNY.

## A. *Materially False Statement And Intent to Deceive*

The "materially false" requirement of 11 U.S.C. § 523(a)(2)(B) connotes more than merely an untrue or erroneous statement. A materially false financial statement is one which is substantially inaccurate. *FDIC v. Reisman (In re Reisman)*, 149 B.R. 31, 37 (Bankr.S.D.N.Y.1993). To be materially false, a financial statement must be "one which paints a substantially untruthful picture of the Debtor's financial condition by misrepresenting information of the type which would normally affect the decision to grant credit." *Hudson Valley Water Re-*

*sources, Inc. v. Boice (In re Boice),* 149 B.R. 40, 45 (Bankr.S.D.N.Y.1992).

Intent to deceive is rarely amenable to direct proof as a debtor is unlikely to admit the perpetration of a fraud. Accordingly, most often, intent to deceive is proven by circumstantial evidence. The requisite intent may be inferred from a sufficiently reckless disregard for the accuracy of the facts. *In re Black,* 787 F.2d at 506. Intent to deceive may also be inferred where the debtor knew or should have known of the falsity of the statement. *Whitney Nat'l Bank v. Delano (In re Delano),* 50 B.R. 613, 619 (Bankr.D.Mass.1985); *American Bank & Trust Co. of Pa. v. Drewett (In re Drewett),* 13 B.R. 877, 880 (Bankr.E.D.Pa.1981).

Apart from the 1990 PFS itself, FABNY presented no evidence, circumstantial or otherwise, to prove intent to deceive. FABNY's proof of deceptive intent begins and ends on its assertion that the representations in the financial statement in respect of the Israel and Catskill Properties were materially false. Presumably, FABNY believes that the alleged material falsity of 1990 PFS *per se* demonstrates Bodenstein's reckless disregard for the truth, or that Bodenstein knew or should have known of the falsities. The deficiency in this bootstrap proof of deceptive intent is that FABNY failed to demonstrate that the representations as to the Israel and Catskill Properties were materially false.

At trial, Bodenstein established his ownership interest in the properties through credible testimony and documentary evidence. Mr. Mordecai Goldberg testified that he sold to Bodenstein his (Goldberg's) fractional interest in the Israel Property for $8,000 and Bodenstein's assumption of an obligation to pay $11,000 towards the cost of developing the undeveloped real estate tract for residential use. Bodenstein also produced a document, translated from the original Hebrew, reflecting receipt by Mr. Goldberg of the purchase price for the Israel Property. FABNY presented no rebuttal evidence and the testimony of Mr. Goldberg and supporting documentary evidence stand uncontroverted.

FABNY argues that even if Bodenstein could establish an ownership interest in the Israel Property, the 1990 PFS is nonetheless materially false because the appraised value of $35,000 reflects the value of the entire tract and not Bodenstein's fractional interest. This contention lacks merit. The $35,000 value placed on the Israel Property does not constitute a materially false statement. The difference between the value of Bodenstein's fractional interest in the Israel Property and $35,000 is not so significant in the context of the overall net worth reflected on the 1990 PFS so as to render that entry substantially inaccurate. Nor does this Court believe that the error of Bodenstein of reporting the value of his interest in the Israel Property would have normally affected the decision of FABNY to grant a total of close to $300,000 in credit.

Having failed to show that the representations regarding the Israel Property were "materially false" within the meaning of 11 U.S.C. § 523(a)(2)(B), FABNY also failed to prove intent to deceive under that provision.[2]

Insofar as the Catskill Property, Bodenstein testified that he had entered into an oral agreement with his brother-in-law, Chaim Gubitz ("Gubitz"), the owner of a bungalow colony. The agreement provided that, should Bodenstein rent the bungalow units at a profit for a period of three consecutive years, Bodenstein would receive a one-third interest valued at $175,000.[3] Bodenstein renovated the bungalows and attempted to

---

**2.** The 1990 PFS submitted by the Bodensteins was on a form supplied by FABNY. This form was prepared by FABNY and made no provision for reporting fractional interests in real estate owned. FABNY gave Bodenstein no instructions or explanations as to this form, which in effect was a credit application. It has been held that a finding of intent to deceive is unwarranted when an omission on a credit application can reasonably be laid to a defect in the format of the credit application combined with a lack of instruction by a lender to a loan applicant. *Federal Credit Union v. Schuster (In re Schuster),* 69 B.R. 352, 355 (Bankr.D.Conn.1987).

**3.** This $175,000 figure was arrived at in two ways: i) by dividing the property's assessed value of $530,000 by three, and ii) by multiplying the $5,000 anticipated per unit profit by 35, the number of rental units.

rent the units in accordance with his understanding of the agreement. Thus, Bodenstein believed that he had an investment in the Catskill Property pursuant to the agreement with Gubitz at the time of submitting the 1990 PFS to FABNY. Disputes and misunderstandings developed between Bodenstein and Gubitz as to the exact terms and implementation of the agreement. Tensions between the two grew to the point that they ceased relations and Bodenstein was ultimately unsuccessful in renting the bungalows for the requisite three year period. Consequently, Bodenstein never formally received the interest in the Catskill Property, notwithstanding his investment in their renovation and his rental efforts. Gubitz corroborated Bodenstein's testimony and, in fact, testified that the agreement still exists.[4] The testimony of Bodenstein and Gubitz regarding the Catskill Property was credible and remains uncontradicted. FABNY presented no rebuttal evidence whatsoever and, as the record stands, this Court is unable to find that the listing by Bodenstein of an interest in the Catskill Property as an investment in real estate on the 1990 PFS was necessarily false.

Bodenstein's entry of the Catskill Property as an investment in real estate on the 1990 PFS was not materially false for another reason. FABNY misinterpreted the disputed entry and FABNY must assume full blame for the mistake. As noted earlier, the 1990 PFS was in actuality a form of credit application supplied and prepared by FABNY in which Bodenstein was to submit certain specified data. No instruction or explanation was given to Bodenstein by FABNY as to filling out the form credit application. At one place of the 1990 PFS was an item to be filled out entitled "Real Estate Owned"; at another place of the 1990 PFS was an item to filled out entitled "Other Assets". Bodenstein reported the Catskill Property under "Other Assets" as "Investment—Real Estate", and not under "Real Estate Owned". FABNY mistakenly, and contrary to its own form credit application, equated "Investment—Real Estate" with ownership of that

real estate. The 1990 PFS did not state that Bodenstein owned an interest in the Catskill Property; it represented that Bodenstein had an investment in real estate. The manner in which the entry is presented on the 1990 PFS may well be construed to reflect the labor, management, materials and "sweat equity" invested in the Catskill Property by Bodenstein under the agreement with Gubitz in contradistinction to present ownership.

Having failed to show that the representation regarding the Catskill Property was "materially false" within the meaning of 11 U.S.C. § 523(a)(2)(B), FABNY also failed to prove intent to deceive under that provision.

### B. *Reasonable Reliance*

■ The reasonable reliance requirement under § 523(a)(2)(B) has two aspects. Not only must the creditor demonstrate reliance upon the false financial statement, but it also must establish that the reliance was reasonable. *Texas Am. Bank, Tyler, N.A. v. Barron (In re Barron)*, 126 B.R. 255, 259 (Bankr. E.D.Tex.1991); H.R.Rep. No. 595, 95th Cong. 1st Sess. 364 (1977) ("[T]he creditor must not only have relied on a false statement in writing, the reliance must have been reasonable."). Thus, FABNY is required to prove that it actually and reasonably relied on the 1990 PFS in its September 1990 renewal of Archway's credit line. FABNY's proof fell short on both counts.

■ The only witness presented by FABNY at trial was Philip Levine, a former bank official who succeeded Mr. Vatter as the person in charge of the Archway account. He assumed this responsibility around February 1990, only a few months prior to submission of the 1990 PFS by Bodenstein. Mr. Levine recommended renewal of Archway's credit line and testified that such renewal was in reliance on Archway's financial position, Bodensteins' guarantees and the collateral base identified in the 1990 PFS.

On the strength of Mr. Levine's brief testimony, this Court is unable make a finding of actual reliance. Mr. Levine testified that he

---

4. Bodenstein, however, testified that, due to the stress in the relationship and misunderstandings, the deal was off.

presented his renewal recommendation to his supervisor for approval. Mr. Levine's unidentified supervisor, the actual approving loan officer at FABNY, was never called as a witness. Nor was Mr. Vatter, who was in charge of Archway's account for FABNY for many years prior to 1990, called as a witness. Moreover, the three year hiatus between the 1987 guarantees obtained by FABNY and the 1990 PFS tends to negate actual reliance. In sum, the record supports the substantial likelihood that FABNY's reliance was on the perceived financial strength and historical payment performance of Archway and not the personal guarantees of the Bodensteins.

Assuming *arguendo* that actual reliance was shown, FABNY failed to demonstrate reasonable reliance on the 1990 PFS. Mr. Levine testified that he relied upon the Israel and Catskill Property entries contained on the 1990 PFS. However, he conducted no investigation or sought no verification whatsoever in respect of those entries. His verification of information contained on the 1990 PFS was restricted to only a visit to the Bodensteins' home. Mr. Levine took pains to point out that their home was the major asset on the 1990 PFS.

■ The term "reasonable reliance" is not defined by the statute. Some courts would impose an affirmative duty to investigate a debtor's financial condition in order for a creditor's reliance to be deemed reasonable. An important early case under the Bankruptcy Code imposing such a duty is *First Nat'l Bank of Dayton, Ohio v. Breen (In re Breen)*, 13 B.R. 965 (Bankr.S.D.Ohio 1981); *see also Kentucky Bank & Trust Co. v. Duncan (In re Duncan)*, 35 B.R. 323, 326 (Bankr.W.D.Ky.1983), (Bank's challenge to dischargeability rejected because, among other things, bank had "ignored its commercial duty to verify ... information [on the financial statement]."). This bankruptcy judge subscribes to a standard of "reasonable reliance" adopted by another member of this Court and articulated as follows:

'[R]easonableness' requires that representations must be found to be of such a character that a reasonably prudent person would rely on them. Such a standard fosters responsible and careful use of solic-ited financial statements and discourages the 'spurious use' of such statements....

*National Bank of N. Am. v. Newmark (In re Newmark)*, 20 B.R. 842, 862 (Bankr.E.D.N.Y. 1982) *(quoting Waterbury Community Fed. Credit Union v. Magnusson (In re Magnusson)*, 14 B.R. 662, 668–69 n. 1 (Bankr. N.D.N.Y.1981)).

■ On its face, the Israel and Catskill Property entries on the 1990 PFS were odd and out of the ordinary, crying out for some investigation or verification. A reasonably prudent person should not have relied blindly on those entries. Surely, ownership of real estate in a troubled foreign country warrants some inquiry. An unusual entry of "Investment—Real Estate", referring to the Catskill Property under "Other Assets", rather than under "Real Estate Owned" demands some probing, inquiry or, at least clarification. FABNY cannot assume the position of an ostrich with its head buried, ignoring obvious questions, and yet claim that it reasonably relied on these entries.

FABNY contends that FABNY's reliance on the 1990 PFS was justified in light of the extended and ongoing favorable relationship between the parties from 1983–1990. This argument is misplaced under the facts of this case. Indeed, it has been held that, in certain situations, a special or longstanding relationship between a lender and a borrower justifies a lender's reliance on a financial statement provided by the borrower, without investigation or verification. *See, Coman v. Phillips (In re Phillips)*, 804 F.2d 930, 933 (6th Cir.1986); *Hong Kong Deposit and Guaranty Co. Ltd. v. Shaheen (In re Shaheen)*, 111 B.R. 48, 53 (Bankr.S.D.N.Y.1990); *Lincoln First Bank, N.A. v. Vario (In re Vairo)*, 40 B.R. 776, 781 (Bankr.S.D.N.Y. 1984). However, any long term relationship in this case was between FABNY and Archway and not FABNY and Bodenstein. FABNY introduced no evidence showing any special relationship between it and Bodenstein. Accordingly, FABNY's blind reliance on the 1990 PFS in the face of matters demanding inquiry was not reasonable.

## IV. SECOND CLAIM FOR RELIEF—11 U.S.C. § 727(a)(4)(A)

■ Bankruptcy Code § 727(a)(4)(A) provides that a debtor will not be granted a discharge if "the debtor knowingly and fraudulently, in or in connection with the case ... made a false oath or account". To sustain an objection to discharge under 11 U.S.C. § 727(a)(4)(A), an objecting creditor must establish the following elements, i) the debtor made a statement under oath; ii) such statement was false; iii) the debtor knew the statement was false; iv) the debtor made the statement with fraudulent intent; and v) the statement related materially to the bankruptcy case. *Beaubouef v. Beaubouef (In re Beaubouef)*, 966 F.2d 174, 178 (5th Cir.1992); *Bank of India v. Sapru (In re Sapru)*, 127 B.R. 306, 314 (Bankr.E.D.N.Y.1991).

■ The Complaint alleges that the Debtors failed to list certain assets in the bankruptcy petition and that such omissions constituted a false oath under 11 U.S.C. § 727(a)(4)(A). The claimed omitted assets are two life insurance policies and certain monies due from friends and relatives. The 1990 PFS lists one life insurance policy issued by the Guardian Life Insurance Company, a whole life insurance policy with a cash surrender value of $28,266 ("Guardian Policy"). A second life insurance policy listed on the 1990 PFS is a term life policy issued by the New York Life Insurance Company ("N.Y. Life Policy"). The 1990 PFS also lists receivables due from relatives and friends in the amount of $25,000. The life insurance policies and receivables from relatives and friends were not reported in the bankruptcy petition, which petition was filed approximately 14 months after submission of the 1990 PFS to FABNY by Bodenstein.

At trial, various reasons for these omissions were spelled out. These reasons tend to negate any fraudulent intent. Bodenstein testified and supplied documentary evidence indicating that the full amount of the Guardian Policy's cash surrender value was used to borrow money for the use of Archway. Having used this asset to secure an indebtedness that he was then unable to pay, Bodenstein understandably no longer considered this asset as belonging to him, and did not report it on his bankruptcy petition. The N.Y. Life Policy was a term policy with no cash surrender value and no discernible worth, and for that reason Bodenstein thought it could not be considered an asset for purposes of bankruptcy.

The $25,000 in receivables represented loans by Bodenstein to various relatives and friends to help such persons. Bodenstein testified that prior to the bankruptcy filing, approximately $12,000 of such loans were collected and used for family expenses, i.e., to marry off a daughter, and the remaining $13,000 was just not collectible and forgiven by Bodenstein. Accordingly, the receivables from relatives and friends were not listed on the bankruptcy petition.

■ The denial of a discharge under 11 U.S.C. § 727(a)(4)(A) cannot be imposed where the false statement was the result of a simple or honest mistake or inadvertence. *Continental Ill. Nat'l Bank and Trust Co. of Chicago v. Bernard (In re Bernard)*, 99 B.R. 563, 570 (Bankr.S.D.N.Y.1989); *Discenza v. MacDonald (In re MacDonald)*, 50 B.R. 255, 259 (Bankr.D.Mass.1985); *4 Collier on Bankruptcy* ¶ 727.04 at 727–61 (15th ed. 1993); *see Avallone v. Gross*, 309 F.2d 60 (2nd Cir. 1962). Rather, to sustain an objection to discharge under 11 U.S.C. § 727(a)(4)(A), the debtor must have willfully made a false statement with intent to defraud his creditors. *Economy Brick Sales, Inc. v. Gonday (In re Gonday)*, 27 B.R. 428, 433 (Bankr.M.D.La. 1983).

Bodenstein's defense to FABNY's claim for relief under 11 U.S.C. § 727(a)(4)(A) rests on credible evidence submitted by him to the effect that the charged omissions in the bankruptcy petition were the result of innocent mistakes or misunderstandings, and were not the product of any fraudulent intent. FABNY set forth no proof to the contrary and in rebuttal of Bodenstein's testimony that the omissions were innocent. Bodenstein's testimony stands uncontroverted. Accordingly, FABNY failed to sustain its ultimate burden of persuasion of proving fraudulent intent, an essential element under 11 U.S.C. § 727(a)(4)(A).

## V. THIRD CLAIM FOR RELIEF—11 U.S.C. § 727(a)(5)

A debtor's discharge may be denied under 11 U.S.C. § 727(a)(5) if "the debtor has failed to explain satisfactorily ... any loss of assets or deficiency of assets to meet the debtor's liabilities." Unlike some of the other subdivisions of 11 U.S.C. § 727, Section 727(a)(5) does not require fraudulent intent. *Prairie Production Credit Ass'n v. Suttles (In re Suttles)*, 819 F.2d 764, 766 (7th Cir. 1987). Once the plaintiff presents proof that the debtor possessed assets which are not listed in the bankruptcy petition, the debtor must satisfactorily explain what happened to such assets. *Beneficial Mortgage Co. v. Craig (In re Craig)*, 140 B.R. 454, 459 (Bankr.N.D.Ohio 1992); *4 Collier on Bankruptcy* ¶ 727.08 at 727–72 (15th ed. 1993). To be satisfactory, the explanation must convince the bankruptcy judge that a debtor has not hidden or improperly shielded assets. In this connection, the classic and still sound pronouncement was long ago formulated and stated as follows:

> The word 'satisfactorily' ... may mean reasonable, or it may mean that the court, after having heard the excuse, the explanation, has the mental attitude which finds contentment in saying he believes the explanation—he believes what the bankrupts say with reference to the disappearance or the shortage. He is satisfied. He no longer wonders. He is contented.

*In re Shapiro & Ornish*, 37 F.2d 403, 406 (N.D.Tex.1929), *aff'd sub nom. Shapiro & Ornish v. J.J. Holliday*, 37 F.2d 407 (5th Cir.1930). Section 727(a)(5) does not require that the explanation itself be meritorious, or that the loss or other disposition of assets be proper; it only requires that the explanation satisfactorily account for the disposition. *G & J Investment v. Zell (In re Zell)*, 108 B.R. 615, 629 (Bankr.S.D.Ohio 1989); *Peoples State Bank of Mazeppa Minn. v. Drenckhahn (In re Drenckhahn)*, 77 B.R. 697, 709 (Bankr.D.Minn.1987).

FABNY contends that Bodenstein has failed to explain the loss or deficiency of assets to meet his liabilities under 11 U.S.C. § 727(a)(5). The Complaint asserts that the Debtors failed to adequately account for certain assets listed on the 1990 PFS, but which did not appear on the bankruptcy petition; specifically, the life insurance policies, receivables from relatives and friends, jewelry and furs, and antiques.[5]

Bodenstein gave plausible and understandable explanations for each of these items. One life insurance policy was, in effect, surrendered as collateral to the full extent of its cash surrender value in order to obtain needed loans. The other policy, which was a term life policy, had no cash surrender value and could therefore not be liquidated to pay creditors. A daughter of the Debtors was engaged in the spring of 1990 and married in November 1990. The Debtors had problems with this daughter for many years and sought to make up with her, in an effort to bring her back and re-establish their relationship. Mrs. Bodenstein gave the daughter her valuable fur coat as an engagement gift and the Debtors made the daughter an expensive wedding in Tel Aviv, Israel, costing between $35,000—$40,000. Bodenstein collected about $12,000 of the loans to relatives and friends, and used those monies to defray the wedding expenses; the remaining loans from relatives and friends were uncollectible. After the engagement, Bodenstein instructed a cousin in Israel to sell the antiques. They were sold for approximately $12,500 and also used to defray the wedding expenses. The jewelry items were stolen during the summer of 1990 from the bungalow at the Catskill property where the Debtors were residing. The stolen property was not recovered by the police; nor was the stolen property covered by any form of insurance.

The Court finds that Bodenstein's testimony was credible, reasonable and a good faith effort to make the explanations required by 11 U.S.C. § 727(a)(5). Accordingly, he accomplished his duty under that provision. Although it had ample opportunity, FABNY did not come forward with any evidence to challenge the adequacy of Bodenstein's explanations of the alleged deficiency or loss of

---

5. The antiques listed on the 1990 PFS consisted of Judaic items and religious books that were no longer in circulation. They were located in Israel.

**34**

assets. Given FABNY's failure to rebut, the Court can fairly conclude that Bodenstein's explanations are satisfactory. *See In re Drenckhahn*, 77 B.R. at 710; *Daniel v. Johnson (In re Johnson)*, 80 B.R. 70, 75 (E.D.La. 1987).

Although FABNY presented no evidence to challenge the adequacy of Bodenstein's explanations, FABNY did criticize and reproach the nature of certain asset dispositions, particularly the expensive wedding in a distant country. However, as shown above, the test under 11 U.S.C. § 727(a)(5) relates to the credibility of the proffered explanations, not the propriety of dispositions. *Minsky v. Silverstein (In re Silverstein)*, 151 B.R. 657, 663 ("The proper question the court must ask under Section 727(a)(5) is *what* happened to the assets, not *why* it happened."). (Emphasis In Original).

■ FABNY further argues that a paucity of documentation corroborating Bodenstein's testimonial assertions renders the explanations unsatisfactory under 11 U.S.C. § 727(a)(5). This argument cannot be sustained in this case. To be sure, there is authority which appears to require document production under 11 U.S.C. § 727(a)(5) to corroborate a debtor's testimony. *See, e.g., Scarsdale Nat'l Bank & Trust Co. v. Switzer (In re Switzer)*, 55 B.R. 991, 998 (Bankr. S.D.N.Y.1991) (The trustee and creditors "should not be required to take the debtor's word that he no longer has these assets."). In this Court's view, the preferable rule would not mandate denial of discharge for failure to produce corroborating papers where the debtor's testimonial explanation bears sufficient credibility. *In re Zell*, 108 B.R. at 629; *In re Drenckhahn*, 77 B.R. at 710; *Indian Head Nat'l Bank v. Mitchell (In re Mitchell)*, 74 B.R. 457, 461—462 (Bankr. D.N.H.1987). An interpretation of 11 U.S.C. § 727(a)(5) mandating documentary corroboration in all instances at a peril of losing a discharge would impermissibly strip purpose and meaning from 11 U.S.C. § 727(a)(3), an independent and separate basis for denying a discharge.[6]

**6.** Bankruptcy Code § 727(a)(3) provides that a discharge may be denied for failure to keep or

## VI. FOURTH CLAIM FOR RELIEF—11 U.S.C. § 727(a)(2)(A)

■ The Complaint alleges that a discharge should be denied because the Debtors transferred property within one year before filing the bankruptcy petition, with intent to hinder, delay or defraud creditors, in violation of 11 U.S.C. § 727(a)(2)(A). Specifically, the Complaint asserts that the transfer of Mrs. Bodenstein's fur coat to her daughter and the sale of the antiques prior to the marriage of that daughter in November 1990 were fraudulent transfers under 11 U.S.C. § 727(a)(2)(A). The uncontradicted testimony at trial, however, was that the fur coat, an engagement gift, and the sale of the antiques occurred more than one year before September 12, 1991, the bankruptcy petition filing date. Moreover, FABNY produced no evidence to prove the fraudulent intent necessary to uphold an objection to discharge under 11 U.S.C. § 727(a)(2)(A).

## VII. CONCLUSIONS OF LAW

1. This Court has jurisdiction of the subject matter and the parties pursuant to 28 U.S.C. §§ 1334(a) and 157(a). This is a core proceeding in accordance with 28 U.S.C. § 157(b)(2)(I) and (J).

2. FABNY has failed to sustain its burden of proving by a preponderance of the evidence that Bodenstein used a materially false financial statement within the meaning of 11 U.S.C. § 523(a)(2)(B).

3. FABNY has failed to sustain its burden of proving by a preponderance of the evidence that Bodenstein made a false oath within the meaning of 11 U.S.C. § 727(a)(4)(A).

4. FABNY has failed to sustain its burden of proving by a preponderance of the evidence that Bodenstein failed to explain satisfactorily losses or deficiencies of his assets to meet his liabilities within the meaning of 11 U.S.C. § 727(a)(5).

5. FABNY has failed to sustain its burden of proving by a preponderance of the evidence that Bodenstein has made transfers

preserve recorded information from which a debtor's financial condition may be ascertained.

of assets with intent to hinder, delay or defraud creditors, as proscribed by 11 U.S.C. § 727(a)(2)(A).

6. Bodenstein is entitled to dismissal of the Complaint filed by FABNY and to a discharge in bankruptcy.

**AN ORDER CONSISTENT WITH THIS DECISION SHALL BE ENTERED SIMULTANEOUSLY HEREWITH.**